No. 29,752.

ARCHIE C. McFALL, *Appellee*, v. WALTER FORD, as Sheriff, etc., and
KATE E. THOMAS, *Appellants.*

(3 P. 2d 463.)

Opinion deny-
ing a rehearing filed October 10, 1931. (For original opinion of affirmance see
*ante*, p. 593, 3 P. 2d 463.)

*Mayo Thomas*, of Los Angeles, Cal., for the appellants.

*A. C. Malloy, Roy C. Davis* and *Warren H. White*, all of Hutchinson, for
the appellee; *Oscar F. Perkins*, of Elkhart, of counsel.

The opinion of the court was delivered by

BURCH, J.: In the original brief for appellants appears the fol-
lowing: .

"The basic error which accounts for the inequitable judgment in this case is
the failure, in considering the effect of a foreclosure sale, to mark the difference
between a foreclosure sale which culminates in a sheriff's deed, with all its
consequences, and a foreclosure sale which is canceled by redemption under
R. S. 60-3439 and 60-3440 of the redemption act, and thereby loses all its
efficacy to effect the title to the real estate."

"The word 'sold' or the word 'sale' cannot be interpreted or construed by
the court to apply to an 'uncompleted' or 'canceled' sale."

"The word 'sold' as used in the statute is to be construed with its usual and
natural signification. The statute must be construed in accordance with the
intention of the legislature therein expressed. The word 'sold' as used means
a completed sale and where a sheriff's deed is issued conveying the land. It
does not mean a canceled and annulled sale. The 'sheriff's sale' does not sell
anything, he merely offers the land for sale, subject to the rights of redemp-
tion, and accepts a bid, . . . No sale has been made. The entire matter
is in abeyance. When the court confirms no sale has yet been made."

The petition for rehearing is quite largely devoted to the same
subject. On page after page it is declared in terms or effect that
there is no sale unless what was done by way of sale was com-
pleted by sheriff's deed; that redemption automatically cancels and
annuls what was done by way of sale; that there was no transfer of
property, because the defendant owner's transferee redeemed; and
that the Thomas lien remained precisely the same as if nothing had
been done by way of sale. The petition for rehearing also contains
the following:

"The questions involved in the case at bar require that the court place a

construction on and define the word 'sold' as used in R. S. 60-3460. Appellants therefore respectfully request the court to define what constitutes a 'sale' or the word 'sold' under said section R. S. 60-3460."

The section referred to reads as follows:

"Real estate once sold upon order of sale, special execution or general execution shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem within the fifteen months hereinbefore provided for." (R. S. 60-3460.)

The words "sale" and "sold," as used in the statute, refer to certain operative facts in the execution by the sheriff of sale process. The legal consequences of these facts may or may not result in conveyance effecting permanent transfer of property. Operative facts and legal consequences of those facts are wholly distinct and different things.

In a foreclosure case the sheriff conducts a land auction, held at the courthouse door. A bid for the land is made, or bids are made. The sheriff accepts the bid, or a bid, strikes off the land to the bidder, and the bidder pays the amount of the bid in money, or partially in money and the remainder constructively. Those facts constitute what the statute treats as a sale and what the statute calls a sale. What the statute treats as a sale, and calls a sale, is a sale for all purposes of the statute.

After what the statute calls a sale, certain things must be done, and other things may be done. The sheriff must make return of the sale to the court. If the court finds the sale has been properly made, the court confirms the sale. If after a sale the real estate sold is not subject to redemption the sheriff executes a deed to the purchaser effective to transfer title to him. If the sale is subject to redemption the sheriff executes a certificate of sale and gives it to the purchaser. The defendant owner may redeem from the sale, and certain creditors may redeem from the sale. If the owner redeems from the sale the sheriff may not do again what he did before to satisfy any balance due on the judgment or decree under which he first acted, or to satisfy any inferior lien, if the holder had a right to redeem. There is no mystery about this, and definitions of the word "sale," as applied to general contract transactions, have no application.

The statute prohibits resale in two classes of cases: first, to satisfy a balance due on the judgment under which the sale was made, and second, to satisfy inferior liens. Land is sold to satisfy

a foreclosure judgment of $10,000. The land sells for $5,000 and costs and taxes, and a certificate of purchase is issued to the purchaser. The defendant owner redeems by reimbursement of the amount of the certificate of purchase, with interest. If the argument made in the petition for rehearing were sound there was no sale, the lien of the foreclosure judgment was not affected, although half of it was satisfied, and the land could be sold again to satisfy the remainder. The statute was enacted to prevent that, and was just as specifically enacted to prevent resale to satisfy inferior liens.

The history of the legislation demonstrates the legislative intention. It was a matter of common knowledge that previous to enactment of the redemption law it was the practice of judgment creditors in mortgage-foreclosure cases to bid small sums, get the land, and still hold large judgment balances over the heads of mortgagors. When the legislature of 1893 met a redemption law was introduced in each house. The senate bill was the first to pass. When it was considered in the house, all after the enacting clause of the senate bill was stricken out, and the house bill was substituted. As thus amended the senate bill was passed by the house. After minor changes in conference, not affecting the resale section, the senate accepted the amendment. The original senate bill provided that land once sold could not be sold again to satisfy any balance due on the judgment pursuant to which the sale was made. The senate bill also provided the land could not be sold again to satisfy any inferior judgment or lien, within a year. Section 23 of the house bill, which became section 23 of the amended senate bill, is R. S. 60-3460, and so far as the legislative records show, no member of either house offered an amendment to that section, although a number of amendments to other sections were proposed.

The petition for rehearing renews and enlarges upon the contention that the judgment of the district court in this action deprived Mrs. Thomas of vested rights.

As indicated in the orginal opinion, the vested rights of Mrs. Thomas were those which accrued to her under the law as it stood when her judgment was rendered in 1928. The redemption statute was passed in 1893.

The redemption statute was different from any statute in existence when it was enacted, and made a radical change in the law of this state. It is idle for the petition for rehearing to cite decisions which did not and could not take this statute into account. Likewise it is idle for the petition for rehearing to ignore the facts and

the law, and argue from the premise that Mrs. Thomas was not a party to the foreclosure actions. The only purpose of making her a party would be to adjudicate rank of liens. She was not a necessary, proper or permissible party to the actions because she acquired no lien to be affected by the actions previous to the day judgment was rendered in the actions. The petition for rehearing states that she has never contended her judgment lien was superior to the judgment liens of the federal land bank. That her lien was an inferior lien is an undisputed fact, and was an indisputable fact. So, her rights, whatever they were, accrued with rendition of her judgment. Those rights are enumerated in the original opinion, and the only question which could arise under the statute as interpreted by the court is, Was the law valid as to an inferior lien holder? The purpose of the law was to get the last cent of value out of land to apply on liens, and when that was done, to protect that land from being taken again and again from an owner who tried to save it by redemption. The statute was therefore an exemption law, enacted in the interest of the public welfare. Thirty-eight years' experience in its administration have demonstrated its social and economic soundness, and the court holds it is legally sound.

Other contentions made in the petition for rehearing do not require discussion, and the petition for rehearing is denied.

HARVEY, J. (dissenting): I accord with the view that appellant's contention for the definition of the word "sold," as used in R. S. 60-3460, cannot be sustained, and that to do so would destroy the force of the section. My view is that it means a confirmed sale as distinct from the sale alone. But this distinction is without practical difference, so far as this case is concerned. The section provides, in short, that real estate once sold shall not again be liable for sale (1) for any balance due on the judgment under which it had been sold, (2) or for "any judgment or lien inferior thereto and under which the holder of such lien had a right to redeem within the fifteen months" previously provided. The statute as a whole was meritorious in its purposes, one of which was to get rid of a well-known evil practice which had grown up by which the plaintiff, in a foreclosure case, would buy the land in for a nominal sum and have a deficiency judgment for a large amount. The first part of this section was designed to put a stop to that. Under it, if a plaintiff bids less than the land is worth, or less than the full amount of his claim, and the property should be redeemed by the

defendant owner, or a junior lien holder, or go to sheriff's deed, the land could not again be sold for the deficiency judgment. Another section, R. S. 60-3439, provides that the defendant owner may redeem by paying the amount the real property sold for. Still another section, R. S. 60-3455, provides that the defendant owner's right of redemption shall not be subject to levy and sale on execution. So, the first provision of section R. S. 60-3460, together with R. S. 60-3439 and R. S. 60-3455, and in harmony with other provisions of the act, effectively eliminates the evil practice of plaintiff's bidding the real property in for a nominal sum and having a large deficiency judgment with which he could harass the debtor. The beneficial purposes even of that provision are not discernible alone from R. S. 60-3460, but from that and other provisions of the act. It is not difficult to apply, for the reason that the amount of the judgment, as well as the amount for which the real property was sold, and the description of the real property, are matters of record in the case and the court at no time has any difficulty in applying that portion of the section.

I think the legislators had a broader purpose in passing the mortgage-redemption law. This recognized facts well known in this state. The ability of owners of real property to pay mortgages or other liens thereon is not constant or uniform. At times their ability to pay is almost negligible; at others it is easy for them to do so. We have had the lean years and the fat ones throughout the history of our state. As a rule, persons who loan money on real property do not want the property. Either they do not know how to handle it or do not care to devote their time to that business. What they want is the return of the sum loaned with the interest thereon. Often they would prefer that ultimate payment be delayed a year, or two years, if it be then made, rather than to take over the property. On the other hand, owners of real property acquired it because they wanted it, for homes or business purposes, or both. They are willing to pay just liens thereon, and when crop and business conditions are normal or better, to do so promptly. During such periods there are few foreclosures. But in times of financial stress, which may result from a general financial depression, as we have now, or from general crop failures, as we have sometimes had, they may find themselves unable to pay. If forced to sell then, their property would bring but a fraction of its value

in normal times, and in many instances would result in their financial ruin. If payments could be delayed for a year or two, general crop or financial conditions would likely improve, enabling them to pay and continue the ownership of their homes and their businesses. The mortgage-redemption law was designed to meet these factual conditions, and is a measure involving statesmanship of a high order. One of the fundamental principles of our jurisprudence is that every man is entitled to his day in court, that a judgment in any case affects only those who are parties to the action and their privies. This principle is thoroughly embedded in the jurisprudence of this state, as it is also in the jurisprudence of every state in the Union and of the United States. It is fair, sound and wholesome. So thoroughly is that principle understood that it has been the uniform practice, both before and since the enactment of the mortgage-redemption law, in bringing actions to foreclose liens on real property, to make all persons, firms, or corporations parties defendant who have any right, title, or interest in the real property, or any lien thereon inferior to that of plaintiff. The instances where that was not done are so few as to be regarded as mistakes. The legislators knew this principle when they passed the mortgage-redemption law. Everybody knew it. To accomplish the purposes desired by the statute there was no necessity for them to abrogate it, and they used no language clearly designed for that purpose. It is my judgment they never intended to abrogate that principle, and that they did not do so. The right to sell, mortgage, or otherwise encumber real property, and to make binding contracts for those purposes is an incident inherent in its ownership. To carry out the purposes of the mortgage-redemption law it was not necessary to abrogate this right. No language for that purpose was used in the act, and in my judgment it was not intended to do so.

By early statutes and decisions of this court, adhered to throughout our history, it was established that a mortgage on real property, whatever its wording, conveys no title, but is a lien only; that the method for one who has a lien on property to get title thereto is by an action to foreclose it, and to have it sold by the sheriff under an execution conforming to the judgment; that a surplus arising from such sale be paid to the defendant in execution, unless the question of its distribution be specifically reserved, but its dis-

tribution could be made only among parties to the action, either originally so, or later brought in; and, generally, when an owner of real property has several liens thereon the payment by him of one of such liens does not discharge the others. These principles certainly were well known to the members of the legislature when the mortgage-redemption law was enacted. It was not necessary to abrogate them to carry out the purposes of the statute, and I find no reason to think there was any intention to abrogate them.

With these principles in mind let us look at the second portion of R. S. 60-3460, which provides that real estate once sold shall not again be liable for sale for "any judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem within the fifteen months hereinbefore provided for." The real question before us is, Just what does this mean? Obviously the provision is not complete in itself. To understand its meaning it is necessary to consider it in connection with other established legal principles, some of which, at least, are embodied in other sections of the statute. It seems that the majority of my associates take the view that the only other things which can be considered are sections R. S. 60-3440 and 60-3441. Clearly they were not originally drafted to be applicable to this section—R. S. 60-3460. It is my view that the latter part of this section should be construed in connection with R. S. 60-3440 and 60-3441, but not with them alone, but with the other statutes and fundamental principles of law hereinbefore enumerated. That such can be done has been heretofore demonstrated by the decisions of this court in *Shrigley v. Black*, 66 Kan. 213, 71 Pac. 301; *State Bank v. Marty*, 121 Kan. 753, 250 Pac. 321; *Stacey v. Tucker*, 123 Kan. 137, 254 Pac. 339, and other cases referred to in the previous dissenting opinion in this case. By so construing the statute we give full effect to the worthy purposes of the mortgage-redemption law without abrogating other sections of the statute and fundamental legal principles which have become well settled in the law of this state.

JOHNSTON, C. J., and SMITH, J., concur in this dissent.