(713 P.2d 480)

No. 57,217

DaMac Drilling, Inc., *Plaintiff-Appellant*, v. David Shoemake, *et al., Defendants-Appellees,*

and

The Buie Co., Inc., *Plaintiff-Appellant*, v. David Shoemake, *et al., Defendants-Appellees.*

Opinion filed January 16, 1986.

*Charles R. Pike,* of McPherson, Bauer, Pike & Pike, Chartered, of Great Bend, for appellant DaMac Drilling, Inc.

*John L. Kratzer, Jr.,* of Timmerman & Kratzer, of Wichita, for appellees Geological Services, Inc., C. Edward Wray and Toby Elster.

*David D. Gaumer* of Law Office of David D. Gaumer, P.A., of Kingman, for appellee Rex Hawkins, d/b/a Hawkins Oil Field Supply.

Before PARKS, P.J., MEYER, J., and DONALD L. ALLEGRUCCI, District Judge, assigned.

PARKS, J.: This case arises out of the foreclosure of a number of lien claims against an oil and gas lease. The owner of the leasehold, DaMac Drilling, Inc., (DaMac) appeals from the rulings of the trial court upholding the validity of lien claims filed by Rex Hawkins, d/b/a Hawkins Oil Field Supply (Hawkins) and Geological Services, Inc., (Geological Services) and excluding the overriding royalty interest from foreclosure.

DaMac obtained its interest in the oil and gas lease, known as the Bergman Lease, by providing services and materials to the leasehold at the request of David Shoemake and Sigma Petroleum, Inc. In exchange for services rendered, DaMac obtained an assignment of the oil and gas lease which, in a separate lawsuit, was held to invest it with ownership free of any claim by Shoemake or Sigma Petroleum. However, the assignment of ownership to DaMac was subsequent to the reservation and recordation of an overriding royalty interest in favor of Toby Elster and C. Edward Wray.

At the same time that DaMac was judicially establishing its ownership claim to the Bergman Lease, foreclosure proceedings on the leasehold were initiated by one of several lien claimants in this suit. Of the liens claimed, DaMac challenged those of Geological Services and Hawkins. It contended that the lien of Geological Services was ineffective because it failed to itemize the services provided or to come within the purview of K.S.A. 55-207. Hawkins' lien was challenged as lacking proper verification. DaMac also contended that the overriding royalty interest created in favor of Toby Elster and C. Edward Wray should be subject to foreclosure pursuant to K.S.A. 55-210. The trial court ruled against DaMac on all three points and DaMac appeals.

The first question presented is whether the trial court erred in upholding the validity of the lien claim of Rex Hawkins.

The provisions of K.S.A. 55-207 through 55-210 grant a statutory lien to persons who provide labor or materials in the development of an oil and gas lease. Similarities between K.S.A. 55-207 and K.S.A. 60-1101 have been recognized, and decisions concerning mechanics' liens are controlling insofar as they are applicable. *Adair v. Transcontinental Oil Co.*, 184 Kan. 454, 461, 338 P.2d 79 (1959); *Fender Pipe & Supply, Inc. v. Jenkins*, 5 Kan. App. 2d 101, 102, 612 P.2d 1253 (1980). Common to both the

provisions creating the general mechanic's lien and those creating the oil and gas lien is the requirement that the lien statement be verified. *Cf.* K.S.A. 60-1102 and 55-209. The oil and gas lien provision states that the statement should be verified by affidavit. If a promissory note was taken in evidence of the labor or materials provided, an itemized statement is not necessary.

The lien statement filed by Rex Hawkins was not verified by separate affidavit but included the following verification statement:

"IN WITNESS WHEREOF, this lien statement is signed and verified by Rex Hawkins, owner and authorized agent for the lien claimant, Hawkins Oilfield Supply, a Kansas Company. Further, that said Rex Hawkins is of lawful age, has read the above and foregoing and was first duly sworn upon his oath. Further that he is fully acquainted with all of the facts and conclusions set forth herein, and that they are true and correct to the best of his knowledge, information and belief; the claim is just, due, reasonable and unpaid."

DaMac contends that this verification is defective such that no lien arose because it did not swear that the statement was true but stated that it was true to the "best of his knowledge, information and belief." DaMac contends that this qualification of the lien claimant's oath renders it an insufficient verification. Appellee Rex Hawkins responds by arguing that the revelation in the lien statement that it is filed by "Rex Hawkins d/b/a Hawkins Oilfield Supply" indicates that it was executed by a person having direct knowledge of the truth of the facts stated in the document so that it is in effect an absolute verification.

Recently, in *Lewis v. Wanamaker Baptist Church*, 10 Kan. App. 2d 99, 692 P.2d 397 (1984), this court considered whether a similar verification was sufficient to satisfy the requirements of the general mechanic's lien law, K.S.A. 60-1102. Although this requirement is not stated in the identical manner as the verification requirement in K.S.A. 55-209, the substance and purpose of both provisions are similar enough that the *Lewis* case should control. *Fender Pipe & Supply*, 5 Kan. App. 2d at 102.

In *Lewis*, the court initially pointed out that verification of a lien statement is a necessary prerequisite to the creation of a valid lien. See also *Ekstrom United Supply Co. v. Ash Grove Lime & Portland Cement Co.*, 194 Kan. 634, 636, 400 P.2d 707 (1965). Moreover, since the mechanic's lien is an entirely statutory device, technical requirements dictated by the statutes as vital to a lien's validity must be strictly met. The court then

reviewed the historical meaning of a "verification" and concluded that a qualified verification which states that the lien statement and attached exhibits are true and correct to the best of the affiant's knowledge and belief, without a showing that he had knowledge of the reported information, is insufficient. In reaching this conclusion, the court rejected the argument that the affiant's status as a person doing business as a sole proprietorship was alone sufficient basis for concluding that the affiant had knowledge of the contents of the lien statement such that his qualified verification was equivalent to an absolute oath. The opinion discussed this argument and the showing which must be made if a qualified verification is to be sufficient, stating as follows:

"Despite the probable accuracy of plaintiff's claim of actual knowledge, neither the lien statement nor the verification indicates that plaintiff personally carried out the described work or had knowledge of the propriety of the charges. Thus, the only thing about plaintiff revealed in the lien statement which distinguishes his position from that of the affiant in *Dorman [v. Crozier,* 14 Kan. 224 (1875),] *is his status as sole proprietor rather than agent of the business claiming* the lien. If this distinction is sufficient to permit a qualified verification by plaintiff while an agent/affiant must swear to the truth absolutely, then it would have to be assumed that any person who operates a business as a sole proprietor has knowledge of the truth of the statements which would be made in a lien statement. The organizational basis of the lien claimant as a sole proprietorship rather than a partnership or corporation would determine the nature of the verification required to create a valid lien. In other words, the sole proprietor who filed a lien statement with a qualified verification would still have a valid lien *even though the same verification when used by a partner or corporate* officer would have to be found insufficient. The meaning of the word 'verified' in K.S.A. 60-1102 would then vary depending upon the status of the claimant filing the lien.

"On the other hand, if plaintiff's verification was acceptable not simply because of some *presumed* degree of knowledge but because of the actual knowledge demonstrated in subsequent deposition testimony, the door would be opened for curing a faulty verification by later testimony. Such a result would contradict those opinions which have concluded that an invalid lien statement *may not be amended to make it valid. See, e.g., Logan-Moore Lumber Co. v. Black,* 185 Kan. 644, 651, 347 P.2d 438 (1959). It is the actual information contained within the verification or body of the lien statement which must indicate that a person with authority to do so swears to the truth of the statement itself.

"In sum, had plaintiff's statement included information evidencing his personal knowledge of the accuracy of the claims made, a qualified verification might have been acceptable. See *Trane [Co. v. Bakkalapulo],* 234 Kan. [348] at 352 [, 672 P.2d 586 (1983)]. Absent any indication that plaintiff's best knowledge

and belief was the same as the truth, the ancient precedent dictates that a less than absolute verification is insufficient. This requirement is a prerequisite to an effective lien's creation and such conditions on the mechanic lien's validity must be strictly construed. *Holiday Development [Co. v. Tobin Construction Co.]*, 219 Kan. [701] at 704-05 [, 549 P.2d 1376 (1976)].

"We adhere to the holding in *Dorman* and reaffirm that a verification stating that the lien statements and attached exhibits are true and correct to the best of the affiant's knowledge and belief, without a showing that he had any knowledge of the subject, is insufficient. Thus, we agree with the trial court that the verification in this case was qualified and not the absolute verification required to satisfy K.S.A. 60-1102." *Lewis*, 10 Kan. App. 2d at 101-02.

The body of the lien statement filed in this case does not reveal any basis from which it can be assumed that the affiant has personal knowledge of all of the facts stated such that his knowledge and belief is the same as the truth. The statement that the affiant is "fully acquainted with all of the facts and conclusions set forth" in the lien statement could arguably be an attestation of personal knowledge. However, an acquaintance with the facts is still not an absolute declaration of knowledge of the facts as true. Overall, the verification offered by Rex Hawkins appears to be no less qualified than that in *Lewis* and, therefore, no more effective. The fact remains that a verification is narrowly defined as an absolute oath to the truth of a statement.

We conclude that the verification in this case was insufficient. The trial court's judgment is reversed insofar as it allowed attachment of a lien based on this lien statement.

The second issue raised on appeal is whether the trial court erred in upholding the validity of the Geological Services' lien claim because the filed statement failed to properly itemize the services rendered or because the services fall outside those protected by K.S.A. 55-207.

K.S.A. 55-209 requires that the lien statement set forth "the amount claimed and the items thereof, as nearly as practicable." However, the statute also states that if a promissory note has been given for the labor or materials, a copy of the note may be filed with the lien statement in lieu of an itemization of labor and material furnished. The lien statement filed by Geological Services included the following information from an invoice as the itemization of its claim:

| Item | | Amount |
|---|---|---|
| "Geological Services for: | | |
| June 21 through June 27, 1983 - 7 days | | $4,725.00 |
| *Less discount if paid by August 5, 1983* | | $1,575.00 |
| | | $3,150.00 |
| Expenses: | | |
| Motel | -0- | |
| Phone | -0- | |
| Misc. | $18.55 | |
| Meals | $67.20 | 85.75 |
| Mileage: 230 Mi. | | 115.00 $3,350,75 |

IF NOT PAID BY AUGUST 5, 1983 THE AMOUNT DUE IS $4,925.75"

DaMac contends that the itemization is insufficient because it fails to list the geological services actually provided and the charges for each. Geological Services counters by contending that the required itemization need not be so specific when the person whose property interest is encumbered bargained for the labor provided. It contends that since the purpose of the requirement is to enable the leasehold owner to check on the accuracy of the claim, the intent of the statute is met by an invoice reflecting the prior agreement of the parties concerning the work to be provided and the fee to be paid.

The language in the current oil and gas mechanic's lien statute is identical to the phrasing in the old repealed general mechanic's lien statute. R.S. 1923, 60-1402. A check of the old mechanic's lien cases reveals that Geological Services' argument has some merit. In *Holtzen v. Dunn*, 176 Kan. 206, 269 P.2d 1042 (1954), a statement showing the contract price for the subcontractor's work was $1,600, that extra colored fixtures were furnished at the request of the owner amounting to $157.10 and that $693.84 had been paid such that a balance of $1,063.26 was claimed, was found to be a sufficient itemization under the statute. The court relied on the following rule laid down in *Lumber Co. v. McCurley*, 84 Kan. 751, Syl. ¶ 2, 115 Pac. 590 (1911):

"A subcontractor's lien statement for material furnished and labor performed under a completed contract for a stipulated gross price is sufficiently itemized which gives the contract price, and extra items stated separately."

This rule was originally adopted to distinguish the case in which the work of the lienor was contracted for at a stipulated price but was not completed when the lien statement was filed.

In such a case, mere recitation of the contract price, extras and payments made was held not to be itemization of the claim "as nearly as practicable." *Nixon v. Cydon Lodge*, 56 Kan. 298, 303, 43 Pac. 236 (1896). Thus, it is the completion or incompletion of the job which was held to be crucial to determining whether an itemization which stated the stipulated gross price instead of listing the actual labor performed and material provided would be adjudged sufficient.

In *Kopp's Rug Co. v. Talbot*, 5 Kan. App. 2d 565, 571, 620 P.2d 1167 (1980), this court construed the meaning of the current requirement for a general mechanic's lien that the lien statement include a "reasonably itemized statement." The court concluded that this language stated a less strict standard than that of the old statute which required itemization "as nearly as practicable." However, the cases cited above indicate that neither standard is too demanding when the lienor's labor or materials were provided under a contract with the owner which stipulated a gross price for the job.

Bearing in mind the similarity between the itemization requirement under the old general mechanic's lien statute and the oil and gas lien provision, and in light of the cases decided under the repealed statute, we conclude that the invoice provided by Geological Services was sufficient under K.S.A. 55-209. The invoice indicated the agreed gross price for labor costs for seven days of geological services, listed additional expense incurred and credited the owner with a discount for timely payment. Such an itemization was approved under the old general lien law and is sufficient here.

DaMac also argues that even if the lien statement included a sufficient itemization, no lien could attach because the services provided by Geological Services do not fall within the definition of "labor" protected by K.S.A. 55-207. Essentially, the services provided were those of a professional on-site geologist including examination and analysis of well cuttings, preparation of daily logs and supervision of testing procedures. DaMac contends that such professional services may not be the subject of an oil and gas mechanic's lien and that the statutory lien is only intended to protect physical labors. Geological Services contends that since the services were provided on-site and were in actual aid of the drilling work, it was labor performed in completing an oil or gas well.

This is a question of first impression in this state. A review of cases in other jurisdictions indicates that while some states have been burdened with very narrow interpretations of the labor protected by mechanics' liens such that statutory amendments were necessary to effect a departure, Kansas law is silent on this point. *Cf. Smith and Associates v. Properties, Inc.*, 29 N.C. App. 447, 224 S.E.2d 692, *rev. denied* 290 N.C. 552 (1976) (prior to statutory amendment no supervisory work protected); *Torkko/Korman/Engineers v. Penland Ventures*, 673 P.2d 769 (Alaska 1983) (statute amended to permit lien for work done in preparation of plans whether or not plans actually carried out). Indeed, there is an abundance of cases in other jurisdictions concerned with whether the on-site professional services of an architect, engineer or land surveyor are the type of labor for which a mechanic's lien may arise. See Annot., 28 A.L.R.3d 1014, 1021. Nevertheless, there is no Kansas case which has squarely considered whether such services fall within any of the mechanic's lien statutes.

In *Calvert Western Exploration Co. v. Diamond Shamrock*, 234 Kan. 699, 707, 675 P.2d 871 (1984), the court held that the transportation of equipment and incidentals to a drill site did not come within the services which are lienable under K.S.A. 55-207. The court did not construe the language of the statute, but indicated that since there is a special mechanic's lien provision relating to the rights of those who transport oil field equipment (K.S.A. 55-213), a transporter's only lien remedy arises under that provision. The court also noted that the activities described in K.S.A. 55-207 (digging, drilling, torpedoing, completing, operating or repairing) all relate to services performed in the construction, repair and operation of oil and gas wells and do not include mere transportation of equipment to the site of the well.

By contrast, work of an on-site geologist in identifying the location for drilling, deciding whether drilling should be continued, and supervising the completion of the well are certainly activities related to the construction and operation of an oil or gas well. In addition, the application of K.S.A. 55-207 to this case would not run afoul of either of the two concerns which have typically resulted in the narrow construction of lienable labor in other states.

The first of these concerns is that the protected labor should be the type of work which improves the property in a manner which

would be apparent to third-party purchasers so that they would be put on notice that lienable claims may be outstanding. See, *e.g., Torkko/Korman/Engineers*, 673 P.2d at 773. The lien claim by Geological Services only included the work of an on-site geologist which would mean that all of his work was performed in conjunction with the use of equipment on the land. This type of observable work on the property should certainly put one on notice that a geologist is at work at the site since the services of a geologist are an integral part of efficient oil and gas exploration and development. This is certainly distinguishable from the situation in which preliminary feasibility studies are conducted off-site.

The second concern that the owner's interest be benefited by the labor to be protected is related to the observation that the fundamental principle underlying the provision of mechanics' liens is unjust enrichment. See, *e.g., Goodyear Tire & Rubber Company v. Jones*, 317 F. Supp. 1285, 1290 (D. Kan. 1968). The courts are reluctant to say that the legislature intended a lien to arise when there is no tangible benefit accruing to the owner to be burdened with the lien. However, the work of an on-site geologist benefits the owner of the leasehold just as surely as do the efforts of the oil rigger. With the expert knowledge and evaluation of a geologist, costly errors occasioned by drilling in the wrong place or drilling in the wrong place for too long can be avoided. The development costs can be kept to a minimum so that profits are maximized. This is without doubt a valuable service to the leasehold owner, which if unpaid for would be a source of unjust enrichment.

Therefore, we adopt the following definition of labor to be applied to the provisions of K.S.A. 55-207: Work performed in the on-site advancement of the construction, repair or operation of an oil or gas well such that the leasehold owner would be unjustly enriched if not burdened by a lien shall constitute lienable labor under K.S.A. 55-207 regardless of whether it involves manual or mental toil. We agree with the trial court that the work performed by Geological Services was the subject of an oil and gas mechanic's lien.

The final issue presented is whether an overriding royalty interest created by reservation in an assignment of an oil and gas lease is subject to foreclosure pursuant to K.S.A. 55-210 by a lien

claimant whose claim arises subsequent to the recording of the assignment.

Appellees Toby Elster and C. Edward Wray, who are also the principals of Geological Services, hold an overriding royalty interest created by reservation in an assignment of the leasehold to David Shoemake. This assignment was recorded on March 28, 1983. Subsequently, the work generating the liens involved in this case was performed and Shoemake assigned its interest to DaMac. DaMac contends that although the overriding royalty interest preexisted the claims of the lien claimants, it should be subject to those claims as a part of the leasehold. It argues that a lien arising by virtue of K.S.A. 55-207 attaches to the "whole of such leasehold" and that this should include an interest such as an overriding royalty which was previously carved out of the working interest. Appellees contend that "such leasehold" only includes the leasehold interest held by the person for whom, or at whose instance, the labor was performed. Since the overriding royalty was assigned and recorded prior to the time the work generating the lien claims was contracted for, appellees argue that it was not part of the leasehold which could be encumbered by the lien claims. Thus, appellees' argument is essentially one of priority. They do not contend that overriding royalty interests are always beyond the reach of a lien claim but that a preexisting royalty interest of this type cannot be subjected to *subsequently* arising liens.

Recently, our Supreme Court considered the definition of an overriding royalty interest for the purpose of determining whether such an interest is subject to a partition action. The Court stated as follows:

"An overriding royalty is a royalty interest carved out of the working interest created by an oil and gas lease. It is an interest in oil and gas produced at the surface free from the expense of production and its outstanding characteristic is that its duration is limited by the duration of the lease under which it is created. [Citation omitted.]

. . . .

"By definition, an overriding royalty interest has neither possessory rights in the leasehold nor does it share a tenancy in common with the lessor's royalty interest or the lessee's working interest. The nature of an overriding royalty is such that only when oil and gas are reduced to possession does the interest attach. Prior to this event, an owner of an overriding royalty interest has no assertible right in the leasehold. Thus, an overriding royalty may be lost entirely by expiration of the primary lease since, absent fraud or breach of fiduciary

relationship, the interest does not continue and attach to a subsequent lease secured in good faith by the lessee. Neither does an overriding royalty survive cancellation, surrender, abandonment resulting from diminution of production beyond economic feasibility, nor total failure to secure production in paying quantities. The coming into being of an overriding royalty owner's rights is dependent upon the happening of a future event or condition." *Mulsow v. Gerber Energy Corp.*, 237 Kan. 58, 61-63, 697 P.2d 1269 (1985).

Ordinarily, a lien claimant cannot obtain a lien on any interest greater than that of its debtor. *Lentz Plumbing Co. v. Fee*, 235 Kan. 266, 274, 679 P.2d 736 (1984). However, as DaMac argues, there is authority indicating that the oil and gas mechanic's lien may attach to an interest in the leasehold even though the debtor did not hold those interests when the lien arose. In *Ball v. Oil & Gas Co.*, 113 Kan. 763, 770-71, 216 Pac. 422 (1923), the Supreme Court considered whether a prior reservation of an interest which resembled an overriding royalty interest was subject to a subsequent oil and gas mechanic's lien. The interest was created when the lessee owning the entire lease assigned a seven-eighths interest to another company for operation of the lease. The assignment was accompanied by a written contract which provided that the assignee should operate the lease and pay the assignor one-eighth of all the oil and gas produced, and that the assignor should be "in no manner liable for the cost of developing and equipping said lease." Finally, the contract also stated as follows: "And it is . . . agreed . . . that [the assignor] shall have recited in said assignment of the said oil and gas lease its one-eighth (⅛) paid-up interest in said lease, equipment and production." It was after execution of this assignment that the work on the leasehold giving rise to a mechanic's lien was performed.

The court held that the interest reserved to the assignor was subject to the payment of the lien, stating as follows:

"Under this arrangement we think the entire lease, appurtenances and appliances were subject to the statutory lien; that the operation of the lease was for the benefit of the holder of the one-eighth interest as well as of the company engaged in the actual operation of the lease, which owned the other seven-eighths; that whatever arrangement was made by the owners of these respective interests between themselves as to who should pay the operating expenses, the lien for labor or material extends to the whole property—to the entire lease and its equipment." *Ball*, 113 Kan. at 771.

In short, the *Ball* decision appears to refute appellees' argument since, in *Ball*, the mere fact that the party who contracted

for the services represented by the lien did not hold the interest in question at the time the lien arose, did not render that interest free from the reach of the lien. However, *Ball* is not authority for concluding that overriding royalty interests are generally attachable, because the interest reserved by the assignor in that case was not an overriding royalty but an interest in the leasehold itself.

The assignment in *Ball* stated only that a party owning the entire working interest was assigning seven-eighths of that interest to another. The separate contract stated that the assignor would not be responsible for operating costs, but this provision simply reflected the agreement of the parties and did not characterize the interest reserved. The provision which the court cited in identifying the assignor's interest stated that it was a one-eighth interest in the *lease, equipment,* and *production* and not simply an interest in the oil and gas produced at the surface. In short, *Ball* does not compel the conclusion that the court would subject an overriding royalty interest to a subsequent lien, but it does appear to indicate that the interest will not be considered free from the effects of foreclosure simply because the lien is subsequent. Therefore, we turn to consider whether the nature of the overriding royalty interest makes it a part of "the whole of such leasehold" so that it is subject to the attachment of the K.S.A. 55-207 lien.

Although the overriding royalty interest is carved out of the leasehold or working interest, it is essentially a royalty. A lessor's royalty is not an interest in the leasehold, but an interest in the minerals actually produced and saved. *Mulsow,* 237 Kan. at 61. Since it has been held that the lien arising under K.S.A. 55-207 does not attach to the oil and gas at the surface (*Black v. Giarth,* 88 Kan. 338, 128 Pac. 183 [1912]), the lessor's royalty interest would not appear to be subject to the attachment of the mechanic's lien or affected by the lien's foreclosure. Similarly, the holder of an overriding royalty interest has no claim in the leasehold itself, but simply has a right to receive a portion of the oil or gas produced. Thus, the overriding royalty interest is more like the royalty held by a lessor than the working interest held by a lessee. In addition, the life of the overriding royalty interest is completely dependent upon continuation of the lease. However, the foreclosure of a lien against the lease does not affect its

termination—it simply compels a sale. There is then no reason compelling extinguishment of the overriding royalty simply because the working interest upon which its initial creation depended is sold.

Bearing in mind the nature of an overriding royalty interest and the scope of a mechanic's lien, we agree with the trial court's ultimate conclusion that the overriding royalty interest should not be subject to the attachment of the lien.

Judgment of the trial court which holds that Hawkins' lien statement was properly verified is reversed. The judgment pertaining to the Geological Services' lien statement and the overriding royalty interest of Elster and Wray is affirmed.