(733) P.2d 1266)

No. 59,590

KANSAS LUMBER COMPANY OF MANHATTAN, KANSAS, INC., *Appellant*,
v. CHENG-YUAN WANG, *et al.*, *Appellees*.

—

Opinion filed March 5, 1987.

*William L. Frost*, Morrison, Frost & Olsen, of Manhattan, for the appellant.

*Bren Abbott* and *John Stites*, of Stites, Hill, Wilson, Knopp & Brownback, of Manhattan, for the appellees.

Before DAVIS, P.J., PARKS and MEYER, JJ.

PARKS, J.: Plaintiff, Kansas Lumber Company of Manhattan, Kansas, Inc., a subcontractor, brought this action to recover money owed by its contractor, Clarence Crowl, and to foreclose its mechanics' liens on property owned by the defendants Wangs, Hwangs, and Chang (defendants). The trial court held that the liens were invalid because they lacked proper verification and granted defendants' motion to dismiss the petition. Plaintiff appeals.

On March 1, 1985, plaintiff filed its petition alleging it had provided materials to defendant Crowl for construction of improvements on real estate owned by defendants. The petition further alleged that these materials were used on defendants' land but that plaintiff had only been partially paid for the cost of the supplies. Plaintiff had filed two lien statements at an earlier date within the time period required by statute. These statements were not verified by a separate affidavit but included the following language in the body of the lien statements:

"STATE OF KANSAS      )
                      )  SS:
COUNTY OF RILEY       )

"NOW on this 15th day of November, 1984, before the undersigned, a notary public within and for the county and state aforesaid, personally appeared Jim Badders, Accountant and Authorized Agent of Kansas Lumber Company, who, being duly sworn, and upon his oath, deposes and states:

"That he is the Accountant of Kansas Lumber Company, of Manhattan, Kansas, which is engaged in the business of supplying building supplies. That he is an authorized agent of Kansas Lumber Company of Manhattan, Kansas, for the purpose of making this lien statement.

"That the name of the owners of the below-described property, commonly known as 1205, 1207 and 1209 Kearney, Manhattan, Riley County, Kansas, which the undersigned claims a lien in are Cheng-Yuan Wang, a/k/a Johnny Y. Wang, and Pao-Mei Hsu Wang, a/k/a Linda Hsu Wang, husband and wife (70%); Ching-Lai Hwang and Grace Y. Hwang, father and daughter (15%); and Cheng S. Chang (15%).

"That the name of the claimant of the lien is Kansas Lumber Company of Manhattan, Kansas.

"That the description of the real property upon which the lien is claimed is as follows:

Lots Seven Hundred Sixty-two (762)
and Seven Hundred Sixty-three (763),
in Ward 3, in the City of Manhattan,
Riley County, Kansas.

"That in August, 1984, Kansas Lumber Company entered into a contract with Clarence Crowl, who was the contractor for and agent of, the owners of the above-described property. Pursuant to said contract, claimant furnished materials, supplies and labor which were used or consumed for the said improvement of the above-described real property. That said materials, supplies and labor were last used and furnished for said property on or about August 15, 1984, on the property commonly known as 1205 Kearney, and on or about August 28, 1984, on the property commonly known as 1207 Kearney.

"That there is attached hereto, marked as 'Exhibit A' and incorporated herein by reference, an itemized statement of the amount claimed.

"That there is now due and owing to claimant, Kansas Lumber Company, for said materials, supplies and labor the sum of Twelve Thousand Four Hundred Forty-nine Dollars and Thirty-one Cents ($12,449.31), plus Two Hundred Eighty-six Dollars and Twenty-one Cents ($286.21) interest thereon as of October 25, 1984, plus interest at the statutory rate from October 26, 1984, until paid in full.

KANSAS LUMBER COMPANY,
Claimant

/s/ James G. Badders
BY: JAMES G. BADDERS,
Accountant and
Authorized Agent

SUBSCRIBED AND SWORN TO BEFORE ME this 15th day of November, 1984.

/s/ Sharon K. Hughes
NOTARY PUBLIC"

The sole issue on appeal is whether the trial court erred in concluding that plaintiff's lien statements were not properly verified.

A person who provides materials or services for the improvement of realty is provided with a lien for the cost of those materials or services by K.S.A. 60-1101. Similarly, a person who acts as a subcontractor by providing labor or materials to the contractor to be used for improvements to the land of another may obtain a lien upon that realty pursuant to K.S.A. 60-1103. In either case, the party claiming a lien must file a lien statement in conformity with the following provision of K.S.A. 60-1102:

"(a) *Filing.* Any person claiming a lien on real property, under the provisions of K.S.A. 60-1101, shall file with the clerk of the district court of the county in which property is located, within four (4) months after the date material, equipment or supplies, used or consumed was last furnished or last labor performed under the contract a verified statement showing:

(1) The name of the owner,
(2) the name of the claimant,
(3) a description of the real property,
(4) a reasonably itemized statement and the amount of the claim . . . ."

Although the mechanic's lien provisions are liberally construed once the lien has been shown to have attached, the requirements for the lien to come into existence must be strictly met. *Holiday Development Co. v. Tobin Construction Co.*, 219 Kan. 701, 704-05, 549 P.2d 1376 (1976); *Lewis v. Wanamaker Baptist Church*, 10 Kan. App. 2d 99, 100, 692 P.2d 397 (1984). Included within these requirements is the specification that the lien statement be "verified." A verification has been held to mean an affidavit attached to the statement swearing to the truth of the matters set forth. *Trane Co. v. Bakkalapulo*, 234 Kan. 348, 672 P.2d 586 (1983). It has also been stated more generally that the verification requirement means the lien statement must be sworn to by the claimant before an officer having authority by law to administer and certify oaths and affirmations. *Ekstrom United Supply Co. v. Ash Grove Lime & Portland Cement Co.*, 194 Kan. 634, 636, 400 P.2d 707 (1965). The verification must be absolute (*Lewis,* 10 Kan. App. 2d at 102) and the lack of a verification in the statement filed necessarily defeats the lien. *D.J. Fair Lumber Co. v. Karlin*, 199 Kan. 366, 369-70, 430 P.2d 222 (1967).

Cases finding lien statement verifications to be flawed have fallen into one of three categories: (1) those which fail to reveal the agency of the signer so that they are not verifications by the *claimant* (*Ekstrom*, 194 Kan. at 636); (2) those which do not verify the truth of the statement because the verification wording merely acknowledges the statement's execution (*D.J. Fair Lumber Co.*, 199 Kan. at 369) or because the verification was not properly notarized (*Halsey v. Pat Reichenberger Lumber, Inc.*, 5 Kan. App. 2d 622, 623, 621 P.2d 1021 [1981]); and (3) those verifications which are qualified. *Lewis*, 10 Kan. App. 2d at 102; *DaMac Drilling, Inc. v. Shoemake*, 11 Kan. App. 2d 38, 42, 713 P.2d 480 (1986). There is no issue raised in this case concerning the execution of the lien statement by an agent of the corporate claimant or the documentation of that agency. Furthermore, defendants did not allege the statement was not properly notarized. Defendants argue and the court held the statement was deficient because the wording of the verification did not verify the truth of the statement. They claim the language in plaintiff's lien statement merely acknowledged the proper execution of the document but did not attest to the truth of its contents. We believe this to be an unduly restrictive interpretation of the language used.

The plaintiff did not file a separate affidavit to attest to the truth of the representations made in the lien statement but, instead, put the lien statement itself in the form of an affidavit. The notarized documents filed by plaintiff state that they were executed by an authorized agent "being duly sworn and upon his oath." An oath has been defined as "a declaration or promise made by calling on God to witness what is said." *In re Heath, Petitioner*, 40 Kan. 333, 335, 19 Pac. 926 (1888). Oath is also defined as "[a]ny form of attestation by which a person signifies that he is bound in conscience to perform an act faithfully and truthfully" and as "[a]n affirmation of truth of a statement, which renders one willfully asserting untrue statements punishable for perjury." Black's Law Dictionary 1220 (4th ed. rev. 1968). Therefore, by making the statements included in the two lien statements after being sworn and upon his oath, plaintiff's agent attested to the truth of the statements' contents.

Plaintiff's lien statement is distinctly different from that considered in *D.J. Fair Lumber Co.*, 199 Kan. at 369, where the court found the wording of the "verification" amounted to a mere acknowledgment. In that case, the claimant's president merely signed the statement which then included an attestation to the president's authority and execution of the document by a notary. By contrast, plaintiff's lien statements included the oath of the claimant's agent. Since the mere use of the word "oath" denotes a declaration of truth, the statements following the oath are "verified" by the party signing the document. The oath was sworn before a notary, an official authorized to administer oaths, K.S.A. 54-101, and could expose the signer to a perjury charge if the representations in the statement were false. K.S.A. 1986 Supp. 21-3805. In *Lewis*, this court discussed the reasons behind the strict application of the verification requirement, stating as follows:

"The apparent strictness of this requirement is not without purpose. The mechanic's lien, once it attaches, clouds the interest of the landowner and takes priority over all subsequent encumbrances. K.S.A. 60-1101. The requirement that the person verifying the lien statement swear absolutely to the truth of the facts stated conveys to the signer both the significance of the ramifications of the lien and the duty to avoid perjury. K.S.A. 1983 Supp. 21-3805." *Lewis*, 10 Kan. App. 2d at 100-01.

While plaintiff did not verify the lien statements with a separate affidavit, the inclusion of the lien statements within an affidavit accomplishes the same end. The purpose of assuring that a lien does not attach in the absence of a self-proved claim of right is satisfied.

The trial court also stated that the lien statement failed to include Badders' attestation that he had knowledge of the veracity of the statements made. However, a promise of knowledge only becomes important if the verification is qualified. For example, in both *Lewis* and *DaMac Drilling*, the verification provision stated the contents of the lien statement were true to the best of the executor's knowledge and belief. Without the inclusion of information in the document which would indicate that the executor's knowledge was tantamount to the truth, the qualified verification did not verify the truth of the contents at

all. When a verification is not qualified by any suggestion that the executor has limited knowledge of the true circumstances, there is no requirement to specifically dispel that possibility. If the contents of the statement are sworn to under oath, they are declared true absolutely. The attestation of knowledge sufficient to state the truth is implicit in the execution of a document under an unqualified oath.

It should finally be noted that in *Cunningham v. Barr*, 45 Kan. 158, 25 Pac. 583 (1891), a lien statement which included the same type of language as that in plaintiff's liens was found properly verified. Defendants seek to distinguish this case by pointing out that the *Cunningham* lien was executed before a district court clerk instead of a notary. This is a distinction without difference. Both a notary and a court clerk are authorized to administer oaths (K.S.A. 54-101) and the oath administered by a clerk is no more or less binding than that administered by a notary. While K.S.A. 60-1102 has certainly been amended over the years, the statutory verification requirement has not changed. In addition, while defendants contend *Cunningham* has been effectively overruled by successive case law, none of these cases refer to *Cunningham* or in any way indicate that a verification sworn within the text of the lien statement is defective.

We conclude that the ruling of the trial court, that plaintiff's verification of the liens is insufficient, is in error.

Reversed and remanded for further proceedings.