(817 P.2d 201)
No. 64,599 ■

J. WALTERS CONSTRUCTION COMPANY, *Plaintiff/Appellee*, v. GREY-STONE SOUTH PARTNERSHIP, L.P., CENTRAL LIFE ASSURANCE COMPANY, and SUN SAVINGS ASSOCIATION, *Defendants/Appellants*, and AIRTECH ENGINEERING, INC., JERRY WARD CONSTRUCTION COMPANY, NATIONAL CONCRETE CONSTRUCTION, R. H. PLUNKETT, INC., SOUND CONTROL SYSTEMS, INC., J. HENGES ENTERPRISES, INC., *Defendants/Appellees*.

Opinion filed April 19, 1991.

W. *Joseph Hatley*, *John L. Vratil*, and *Laura J. Bond*, of Lathrop Norquist & Miller, of Overland Park, for appellants.

*Dennis J. Stanchik*, of Silverman & Stanchik, of Mission, for appellees Joseph R. Walters and Baker Smith Sheet Metal Company.

*Scott I. Asner*, of Olathe, for appellee Airtech Engineering, Inc.

*Michael E. Whitsitt* and *Kirk D. Auston*, of Whitsitt, Auston & Skinner, of Overland Park, for appellees Jerry Ward Construction Company, National Concrete Construction, and R. H. Plunkett, Inc.

*Robert Ernest Gould*, of Gould & Moore, P.C., of Kansas City, for appellee Sound Control Systems, Inc.

*Ron Bodinson*, of Shook, Hardy & Bacon, of Overland Park, for appellee J. Henges Enterprises, Inc.

Before REES, P.J., RULON, J., and GEORGE F. SCOTT, District Judge, assigned.

REES, J.: Upon K.S.A. 60-254(b) certification, Central Life Assurance Co. and Sun Savings Association appeal from a district court determination that liens against the Greystone South Office Plaza complex asserted by the general contractor, J. Walters Construction Co., and several subcontractors, have priority over mortgages against the complex held by Central and Sun. Finding no reversible error, we affirm.

Central Life and Sun complain that Walters Construction's lien statement was improperly verified, several of the lien statements are illegible and contain impermissibly broad property descriptions, and certain lien statements contain deficient statements of the materials and labor provided. Further, they argue the trial court erred in computing the amount due Joseph Walters under a lien interest assignment by Walters Construction to him. They complain that the trial court erred in awarding prejudgment interest when ordering enforcement of the liens. Finally, they assert the court erred in ruling that all the mechanics' liens, including those of the subcontractors, relate back to the date Walters Construction began work on the project and therefore are superior to the mortgages held by Central Life and Sun.

Our standard of review of findings of fact and conclusions of law is settled:

" Where the trial court has made findings of fact and conclusions of law, the function of [the appellate] court . . . is to determine whether the find-

ings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. [Citations omitted.] Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.] Stated in another way, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]" *Williams Telecommunications Co. v. Gragg*, 242 Kan. 675, 676, 750 P.2d 398 (1988).

Our review of conclusions of law is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988). In addition, when, as here, the appeal involves review of documentary evidence considered by the trial court, the following applies:

" 'Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, . . . on appellate review [we have] as good an opportunity to examine and consider the evidence as did the court below, and to determine *de novo* what the facts establish.' [Citation omitted.]" *Bell v. Tilton*, 234 Kan. 461, 468, 674 P.2d 468 (1983).

Finally, because this case involves application of Kansas' mechanic's lien statutes, it is to be borne in mind that requirements for the lien to come into existence must be strictly met, but once the lien has attached mechanic's lien provisions are liberally construed. *Kansas Lumber Co. v. Wang*, 12 Kan. App. 2d 20, 22, 733 P.2d 1266 (1987).

Provided they meet the filing requirements of K.S.A. 60-1102, under K.S.A. 60-1101 contractors have the right to a lien on property for services rendered.

The requirements of K.S.A. 60-1102 are stated as follows:

"(a) *Filing*. Any person claiming a lien on real property, under the provisions of K.S.A. 60-1101, shall file with the clerk of the district court of the county in which property is located, within four (4) months after the date material, equipment or supplies, used or consumed was last furnished or last labor performed under the contract a verified statement showing:

"(1) The name of the owner,

"(2) the name of the claimant,

"(3) a description of the real property,

"(4) a reasonably itemized statement and the amount of the claim, but if the amount of the claim is evidenced by a written instrument, or if a

promissory note has been given for the same, a copy thereof may be attached to the claim in lieu of the itemized statement."

We held in *Kansas Lumber Co. v. Wang*, 12 Kan. App. 2d at 22:

"Although the mechanic's lien provisions are liberally construed once the lien has been shown to have attached, the requirements for the lien to come into existence must be strictly met. [Citations omitted.] Included within these requirements is the specification that the lien statement be 'verified.' A verification has been held to mean an affidavit attached to the statement swearing to the truth of the matters set forth. [Citation omitted.] . . . The verification must be absolute [citation omitted] and the lack of a verification in the statement filed necessarily defeats the lien. [Citation omitted.]"

In the present case, the trial court made the following findings:

"12. The mechanic's lien statement filed by [Walters Construction] on 17 March 1986 was signed on the front of the lien in the following manner: 'Dennis Stanchik for J. Walters Construction'.

"13. The verification statement of the mechanic's lien filed by [Walters Construction] was signed by Dennis Stanchik and read as follows:

" 'Dennis Stanchik being first duly sworn on his oath states that the above and foregoing statement is true and correct and the amount therein claimed is justly due the claimant.'

"14. At the time of the filing of the mechanic's lien statement by [Walters Construction], Dennis Stanchik was the attorney at law for [Walters Construction] and was instructed by the President of [Walters Construction] to sign, verify and file the lien statement.

"15. Prior to the filing of the lien statement, Joseph R. Walters [Walters Construction's president] explained all of the matters referred to in the mechanic's lien statement filed by [Walters Construction] to Dennis Stanchik and allowed Dennis Stanchik to examine the corporate records to verify the accuracy of the matters contained in the lien statement."

The trial court concluded Walters Construction's mechanic's lien statement was "in full compliance with the provisions of K.S.A. 60-1101 *et seq.* and is therefore valid and enforceable in all respects."

Mechanic's lien statement verification has been an issue in a number of Kansas cases. In *Dorman v. Crozier*, 14 Kan. 224, 225 (1875), there appears this verification text and Supreme Court response:

"W. J. Bound, of lawful age, and the agent of Uriah Dorman, a non-resident of the county of Miami, being by me first duly sworn, deposeth and says,

that he is the agent of Uriah Dorman, and the facts as above set forth are true and correct according to the best of his knowledge and belief."

The Supreme Court held:

"An affidavit made by an agent of another verifying a statement of a claim filed . . . [under] the mechanic's lien law . . . for the purpose of procuring a mechanic's lien on certain real estate, should be sworn to positively. [Citation omitted.] An affidavit for such a purpose, made by such an agent, stating that 'the facts as above set forth are true and correct, according to the best of his [the agent's] knowledge and belief,' without showing that he had any knowledge upon the subject, is not sufficient." 14 Kan. at 227.

In *Lewis v. Wanamaker Baptist Church*, 10 Kan. App. 2d 99, 692 P.2d 397 (1984), the language of the verification at issue was this:

" ' That he is the claimant in the above and foregoing Mechanics Lien; that he has read the above and foregoing lien and swears that the statements and allegations contained therein along with the attached Exhibit "A" are true and correct to the best of his knowledge and belief.' "

In *Lewis*, we held that qualified verifications are not sufficient to satisfy K.S.A. 60-1102 and that only an absolute verification will do. 10 Kan. App. 2d at 102.

Again, the verification now at issue reads: "Dennis J. Stanchik being first duly sworn, on his oath states that the above and foregoing statement is true and correct and that the amount therein claimed is justly due the Claimant." This verification is not qualified as were the verifications in *Dorman* and *Lewis*. It is, instead, absolute. We are satisfied that Stanchik's verification meets the tests of *Dorman* and *Lewis*, as well as that of *Kansas Lumber Co. v. Wang*, 12 Kan. App. 2d at 25, where this appears:

" When a verification is not qualified by any suggestion that the executor has limited knowledge of the true circumstances, there is no requirement to specifically dispel that possibility. If the contents of the statement are sworn to under oath, they are declared true absolutely. The attestation of knowledge sufficient to state the truth is implicit in the execution of a document under an unqualified oath."

Central Life and Sun complain the verification is ineffective because Stanchik did not indicate his authority to act on behalf of the corporate claimant. Providing guidance is *Trane Co. v. Bakkalapulo*, 234 Kan. 348, 672 P.2d 586 (1983). There, the lien statement was signed by one Charles R. Wilson, who identified

himself on that document as an attorney for the corporate claimant. After recitation that he was duly sworn, Wilson's affidavit stated "'the above and foregoing statement is true and correct and that the amount therein claimed is justly due the Claimant.' " 234 Kan. at 350. The Supreme Court ruled:

"When Charles R. Wilson verified the mechanic's lien statement presently in issue, the effect of his verification was to swear to the truth of the matter contained in the body of the lien statement, including his representative capacity. . . . Where the effect of the verification is to incorporate by express reference each of the allegations referred to in the attached statement, and to swear to the accuracy of those allegations, it is redundant to require the affiant to restate his representative capacity in the affidavit where it already appears in the statement being verified." 234 Kan. at 352.

In the case before us, Stanchik's subscription was in these words: "Dennis Stanchik *for* J. Walters Construction." (Emphasis added.) This indicated his representative capacity. Then, after reciting that he was under oath, Stanchik stated "the above and foregoing statement is true and correct and that the amount therein claimed is justly due the Claimant." This language is identical to that used in *Trane*. As the *Trane* verification served as a verification of the affiant's representative capacity indicated in the lien statement, the verification here likewise serves as a verification of Stanchik's representative capacity as indicated in the lien statement.

The next question raised is whether Stanchik adequately indicated his representative capacity in the lien statement. "A corporate lien claimant . . . cannot as a corporation either sign a lien statement or verify one. Both statement and verification must be signed and executed by some individual acting for and on behalf of the corporation." *Trane*, 234 Kan. at 351. Stanchik did not indicate that he signed the statement as corporate counsel, as did Wilson in *Trane*. 234 Kan. at 350. We know of no requirement that only corporate counsel sign lien statements. Stanchik clearly showed he was signing as an agent of the corporation by using the "for J. Walters Construction" language. It is said in *Trane*, 234 Kan. at 351, that "[a]n agent of the claimant may verify a lien statement."

We are satisfied that Stanchik's signature to the lien statement was appropriate and that his representative capacity was satisfac-

torily recited and verified. Stanchik's representative role was adequately shown.

Relying upon *Sutherland Lumber Co. v. Due*, 212 Kan. 658, 512 P.2d 525 (1973), Central Life and Sun challenge the property description included in the mechanic's lien statements at issue here. They assert that the description should enable "a person intimately familiar with the location . . . by reading the legal description, [to] identify Phase III to the exclusion of the rest of the project." The property description *Sutherland* held to be deficient read " '[O]ne barn and the surrounding tract of land belonging to Mr. and Mrs. L. E. Due of Rural Route 1, Centerville, Kansas.' " 212 Kan. at 660. In fact, the Dues owned four tracts of land in three different locations. 212 Kan. at 661. In the case before us, the liens described a single tract of land on which there were multiple construction projects. Given the difference in facts, *Sutherland* is not particularly helpful here.

The facts in *Confinement Specialists, Inc. v. Schlatter*, 6 Kan. App. 2d 1, 7, 626 P.2d 223, *rev. denied* 229 Kan. 669 (1981), are more analogous to our case. In *Confinement Specialists*, we were asked to determine whether, under the mechanic's lien statute, a lien attached to "the entire tract of land owned by the defendants or is limited to that area of the land required for the reasonable use and occupation of the improved structure." 6 Kan. App. 2d at 4. There, the owners of a quarter-section had a building to house hogs they raised constructed in the northeast part of the quarter; the owners resided in the southwest quarter. When the owners defaulted on payments to creditors, mechanics' liens were filed describing the entire quarter. 6 Kan. App. 2d at 2. The owners argued, and the trial court agreed, the liens could only attach to the portion of the property benefited by the improvement. 6 Kan. App. 2d at 3. We reversed, holding the liens attached to the entire quarter. 6 Kan. App. 2d at 7.

In this case, Central Life and Sun argue mechanics' liens must identify only that portion of a tract benefited by an improvement, rather than the entire tract, to be effective. We are not persuaded. The argument is contrary to *Confinement Specialists*.

Central Life and Sun also argue the property descriptions in a number of the lien statements filed are invalid because they are illegible. The trial court found the descriptions legible. Upon

our examination of the documents involved, we find that, although it is difficult to read them, the descriptions can be read. They are not illegible. We find no fatal flaw.

It is complained that the lien statements filed by J. Walters Construction, Airtech Engineering, Allied Tile, and Sound Control Systems are invalid because they do not provide sufficient information to allow the property owner to determine if work has been completed or if the charges were fair. In response it is argued that the attachments to the lien statements provided ample basis to determine whether work was completed and charges were fair, and that the statutory requirements are overstated. The trial court found the various lien statements all included "detailed itemization of account[s] showing all amounts due and owing and detailing the work and materials for which payment was owed" and met statutory requirements.

The development of the mechanic's lien law and its requirements for the statement of the labor and materials furnished are discussed in *DaMac Drilling, Inc. v. Shoemake*, 11 Kan. App. 2d 38, 43-44, 713 P.2d 480 (1986):

"In *Holtzen v. Dunn*, 176 Kan. 206, 269 P.2d 1042 (1954), a statement showing the contract price for the subcontractor's work was $1,600, that extra colored fixtures were furnished at the request of the owner amounting to $157.10 and that $693.84 had been paid such that a balance of $1,063.26 was claimed, was found to be a sufficient itemization under the statute. The court relied on the following rule laid down in *Lumber Co. v. McCurley*, 84 Kan. 751, Syl. ¶ 2, 115 Pac. 590 (1911):

" 'A subcontractor's lien statement for material furnished and labor performed under a completed contract for a stipulated gross price is sufficiently itemized which gives the contract price, and extra items stated separately.'

"This rule was originally adopted to distinguish the case in which the work of the lienor was contracted for at a stipulated price but was not completed when the lien statement was filed. In such a case, mere recitation of the contract price, extras and payments made was held not to be itemization of the claim 'as nearly as practicable.' [Citation omitted.] . . .

"In *Kopp's Rug Co. v. Talbot*, 5 Kan. App. 2d 565, 571, 620 P.2d 1167 (1980), this court construed the meaning of the current requirement for a general mechanic's lien that the lien statement include a 'reasonably itemized statement.' The court concluded that this language stated a less strict standard than that of the old statute which required itemization 'as nearly as practicable.' However, the cases cited above indicate that neither standard is too demanding when the lienor's labor or materials were provided under a contract with the owner which stipulated a gross price for the job."

The record in this case reveals that the contested lien statements include either copies of signed contracts between the parties or other evidence that all work was done under and according to negotiated gross price contracts between the respective parties. A "not too demanding" standard is appropriate for application in testing the adequacy of the itemization of labor and materials furnished. *DaMac Drilling*, 11 Kan. App. 2d at 43-44. Since the contractors and subcontractors went well beyond merely giving the contract price, and extra items stated separately (*Lumber Co. v. McCurley*, 84 Kan. 751, Syl. ¶ 2), we are satisfied that the trial court did not err in holding the statements of labor and material were sufficient.

A memorandum to the assignment of the Walters Construction lien to Joseph Walters states:

" The parties agree that the assignment of mechanics lien rights pursuant to the document attached hereto is not to include any amounts of overhead and profit of J. Walters Construction Co., Inc. and includes rights only of subcontractors of J. Walters Construction Co., Inc."

That portion of the agreement plainly reveals that Joseph Walters was assigned the $416,275.84 mechanic's lien, but had no right to collect any portion of that attributable to Walters Construction's profit or overhead.

At trial, Joseph Walters testified that, despite the amount claimed in the mechanic's lien, the total balance due Walters Construction Company was $454,791.11, of which $65,311.41 was attributable to overhead and profit. The court awarded $389,479.70 to Joseph Walters, apparently by subtracting the smaller figure above from the larger. Central Life and Sun argue that in doing so the court allowed the lien total to be increased in violation of K.S.A. 60-1105. That contention fails because the effect of the trial court's determination was to treat $26,796.14 of the original $416,275.84 mechanic's lien as profit and overhead for Walters Construction, which could not be claimed by Joseph Walters under the terms of the lien assignment. The trial court did not impermissibly allow an increase in the lien amount.

Central Life and Sun complain that the lienholders could not recover prejudgment interest because their claims were not liquidated until trial. Interest is an inappropriate remedy when the

claim is unliquidated. *Arrowhead Constr. Co. v. Essex Corp.*, 233 Kan. 241, 251, 662 P.2d 1195 (1983); *Scott v. Strickland*, 10 Kan. App. 2d 14, 24, 691 P.2d 45 (1984). Interest is an appropriate remedy when claims are liquidated although subject to setoff or counterclaims. *Phelps Dodge Copper Products Corp. v. Alpha Construction Co.*, 203 Kan. 591, 595-97, 455 P.2d 555 (1969).

In *Phelps Dodge*, materials were furnished to Alpha Construction under a contract with Phelps Dodge. Alpha failed to pay $292,684.22 and Phelps Dodge sued to collect the contract balance. Alpha counterclaimed for $184,416.08. The trial court awarded Phelps Dodge $136,392.71 plus $27,000 in interest. 203 Kan. at 592. On appeal, Alpha argued interest was inappropriate because Phelps Dodge's claim remained unliquidated until trial. 203 Kan. at 595. The Supreme Court ruled Phelps Dodge's claim was easily computed and became liquidated on the date it was due. The following rule was adopted:

" 'Ordinarily, where the amount of a demand is sufficiently certain to justify the allowance of interest thereon, the existence of a set-off, counterclaim, or cross claim which is unliquidated will not prevent the recovery of interest on the balance of the demand found due from the time it became due.' " 203 Kan. at 595.

See also *Arrowhead Constr. Co. v. Essex Corp.*, 233 Kan. at 251 (when the amount past due on a contract and the date it was due are certain, the creditor is entitled to interest from the date due).

The trial court found Walters Construction fully performed its contract with Greystone and the amount due under that contract could be calculated on the date the mechanic's lien statement was filed. The material facts here are indistinguishable from those in *Phelps Dodge*. Central Life and Sun's complaints that Joseph Walters stated differing amounts as due for work on the project are misdirected. Admittedly, Joseph Walters attempted to increase the amount of Walter Construction's initial mechanic's lien. Nonetheless, Joseph Walters' attempts to increase the amount recoverable do not make the initial, valid, and enforceable lien claim less certain. It was filed for $416,275.84, and there is no dispute that *at least* that amount was due Walters Construction when the lien statement was filed.

Central Life and Sun also argue the assignment of the lien from Walters Construction to Joseph Walters created uncertainty about how much Joseph Walters was entitled to; therefore, the amount due was unliquidated and interest could not accrue. While appellants would have this court focus attention on the alleged uncertainty about the amount due Joseph Walters, the real issue here is whether the amount due under the lien itself was liquidated. Joseph Walters' share of the lien amount is immaterial to the question whether the lien amount was liquidated. The trial court did not err in holding the mechanic's lien amount was liquidated when the lien statement was filed.

Central Life and Sun argue Airtech's $54,942 lien claim was unliquidated because Greystone claimed the firm did not properly complete its contract and eventually stipulated to a $700 offset with Airtech. The trial court's order on the parties' stipulation shows the court held:

"IT IS FURTHER AGREED and the Court finds that the balance due before consideration of attorney's fees and interest, in the amount of $54,242.00, shall be considered to be liquidated damages and that sum is not rendered to be unliquidated by virtue of the stipulated offset in the amount of $700.00 for purposes of determining whether Airtech Engineering, Inc. is entitled to interest."

The court granted the parties ten days to object to the order; none did. Because there was no objection, this finding is not subject to challenge on appeal. *Celco, Inc. of America v. Davis Van Lines, Inc.*, 226 Kan. 366, 368, 598 P.2d 188 (1979).

The journal entry memorializing judgment in Jerry Ward's favor shows the parties stipulated to damages of $17,119.30 rather than the $19,711.79 claimed in the mechanic's lien statement. Central Life and Sun argue that fact proves Jerry Ward's claim was unliquidated until the district court entered judgment.

Jerry Ward's lien claim was based on the original $151,755 contract, and the lien statement specifically itemized payments due and payments received. Under *Phelps Dodge* and *Arrowhead Constr.*, the claim was liquidated when the lien statement was filed. Any reduction or setoff or other claim that would reduce the actual payment due Jerry Ward was for "an offsetting claim arising out of the same contract or transaction." *Phelps Dodge*, 203 Kan. 591, Syl. ¶ 4.

Central Life and Sun also argue that several lienholders were improperly awarded prejudgment interest when their lien statements or petitions for relief failed to include prayers for interest.

First, the record displays no basis for the claim that no interest was sought in the lien statements or petitions for relief. Walters Construction, Baker Smith, and National Concrete had contracts that required interest to be paid on late payments, and they attached those contracts to their mechanic's lien statements. Further, their petitions specifically request interest or any relief the court deems just and equitable. Sound Control Systems and J. Henges sought interest in their pleadings.

Second, as previously discussed, mechanic's lienholders are entitled to interest on the amount due provided the amount due is liquidated. *Arrowhead Constr.*, 233 Kan. at 251; *Scott v. Strickland*, 10 Kan. App. 2d at 24. Further, K.S.A. 16-201 and 16-205 provide guidance. K.S.A. 16-201 states in part:

"Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; . . . from the day of liquidating the account . . . ."

K.S.A. 16-205 states in part:

"(a) When a rate of interest or charges is specified in any contract, that rate shall continue until full payment is made, and any judgment rendered on any such contract shall bear the same rate of interest or charges mentioned in the contract . . . ."

All of the claims in this case were liquidated on the dates the lien statements were filed. Further, interest or just and equitable relief was sought in the cross- and counterclaims. The trial court did not err in awarding prejudgment interest.

Central Life and Sun also argue that, by seeking interest, defendants are improperly amending their lien statements in violation of K.S.A. 60-1105(b). This argument is mistaken. The lien statements state the amount due at the time each statement was filed. K.S.A. 60-1102. The debt becomes liquidated when the lien statement is filed. Interest accrues from that time. K.S.A. 16-201. K.S.A. 60-1105(b) prohibits amendment of a lien statement to increase the amount due as of the date of filing the lien statement. That statute does not concern interest accruing from the date of filing.

Central Life and Sun next argue Airtech Engineering provided no labor or materials at the construction site until long after the mortgages had attached and, therefore, the trial court erred in ruling Airtech's lien related back to April 9, 1985, the date Walters Construction began work on the site. The trial court, however, did not decide the priority issue on the facts relating to Airtech's involvement at the construction site. Instead, it held Walters Construction's mechanic's lien had first priority and all other timely filed mechanics' liens would attach as of the date Walters Construction's lien attached.

Central Life and Sun also argue the trial court erred by allowing the liens of subcontractors to relate back to April 9, 1985. Specifically, they contend the court erred in ruling subcontractors' mechanics' liens filed under K.S.A. 1990 Supp. 60-1103 attach under the rules governing contractor's mechanics' liens in K.S.A. 60-1101.

The rules governing statutory construction are well known:

" The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citations omitted.]" *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987).

In addition to the rule of statutory construction, Kansas courts have provided some general principles governing interpretation of mechanic's lien statutes that are helpful here. "The general purpose of the mechanic's lien statute is to protect labor and materialmen. It is when the principal contractor is bankrupt or unable to pay that labor and materialmen need the protection of the statute." *Geis Irrigation Co. v. Satanta Feed Yards, Inc.*, 214 Kan. 373, 375, 521 P.2d 272 (1974). Further, as mentioned, "[o]nce a lien has attached, our mechanic's lien statutes are to be liberally construed." *Holiday Development Co. v. Tobin Construction Co.*, 219 Kan. 701, Syl. ¶ 2, 549 P.2d 1376 (1976).

The specific language at issue here is found in K.S.A. 60-1101 and K.S.A. 1990 Supp. 60-1103. K.S.A. 1990 Supp. 60-1103 states in part:

"(a) *Procedure.* Any supplier, subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, subcontractor or owner contractor may obtain a lien for the amount due in the same manner and to the same extent as the original contractor . . . ."

K.S.A. 60-1101 states:

"Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a contract with the owner or with the trustee, agent or spouse of the owner, shall have a lien upon the property for the labor, equipment, material or supplies furnished, and for the cost of transporting the same. The lien shall be preferred to all other liens or encumbrances which are subsequent to the commencement of the furnishing of such labor, equipment, material or supplies at the site of the property subject to the lien. When two or more such contracts are entered into applicable to the same improvement, the liens of all claimants shall be similarly preferred to the date of the earliest unsatisfied lien of any of them."

The question raised here is whether in K.S.A. 1990 Supp. 60-1103 the legislature meant for the phrase "in the same manner and to the same extent" to allow subcontractors' liens to be preferred to the date of the earliest unsatisfied lien on the property.

Prior to the revision of our code of civil procedure, the mechanic's lien statutes at issue were found in G.S. 1949, 60-1401, and G.S. 1949, 60-1403 (1961 Supp.). G.S. 1949, 60-1403 (1961 Supp.) said in part:

"Any person who shall furnish any such material, or perform such labor by himself, with horse or team, or horses and driver, or auto truck or auto truck and driver, under a subcontract with the contractor, or as an artisan or day laborer in the employ of such contractor, may obtain a lien upon such land *from the same time, in the same manner, and to the same extent as the original contractor,* for the amount due him for such material and labor . . . ." (Emphasis added.)

Under G.S. 1949, 60-1401, a general contractor's "lien for labor performed or material furnished in the construction or erection of improvements attaches from the date work or construction commences." *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.,* 184 Kan. 202, 204, 336 P.2d 463 (1959). Thus, reading G.S. 1949, 60-1403 (1961 Supp.) in light of G.S. 1949, 60-1401, a subcontractor's lien would attach "from the same time . . . as

the original contractor," or the subcontractor's lien attached from the date the general contractor began "work or construction."

In 1963 the legislature modified the code of civil procedure.

" The Advisory Committee notes state the new code of civil procedure made no major change in the right and none in the procedure pertaining to liens for improvement of real property, except the volume of language in G.S. 1949, 60-1401, 60-1402, G.S. 1961 Supp. 60-1403 and G.S. 1949, 60-1404 was reduced for purposes of clarity." *Toler v. Satterthwaite*, 200 Kan. 103, 105, 434 P.2d 814 (1967).

See 5 Vernon's Kansas C. Civ. Proc. §§ 60-1101, 60-1103 (1967).

The first version of K.S.A. 60-1103 stated in part:

"Any subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, or a subcontractor of the contractor, may obtain a lien for the amount due *in the same manner and to the same extent as the original contractor* . . . . (Emphasis added.)" K.S.A. 60-1103 (Corrick).

The language in the emphasized phrase is identical to that in K.S.A. 1990 Supp. 60-1103. Since the Supreme Court determined the legislature meant the 1964 statute to have the same effect as its predecessor, it follows that the legislature intended the same effect for the two phrases:

1. ". . . from the same time, in the same manner, and to the same extent as the original contractor . . . ." G.S. 1949, 60-1403 (1961 Supp.); and,

2. ". . . in the same manner and to the same extent as the original contractor . . . ." K.S.A. 60-1103 (Corrick) and K.S.A. 1990 Supp. 60-1103.

We conclude the legislature must have intended subcontractors' mechanics' liens to attach at the time the general contractor began work or construction.

There is an additional basis in the statute to support this conclusion. K.S.A. 60-1109 requires: "If the proceeds of the [foreclosure] sale be insufficient to pay all the claimants, then the court shall order them to be paid in proportion to the amount due each."

If the legislature did not intend all mechanics' liens, contractors' and subcontractors' liens alike, to attach at the same time, then the only other reasonable interpretation would be that liens attach at the time each contractor or subcontractor began work on the project. Under that interpretation, there would be no reason to

pay lien claimants "in proportion to the amount due each" under K.S.A. 60-1109, because their liens would attach on different determinable dates, and payment could be made on the basis of chronological priority. Under that system, the first on the job would be the first paid, and the last on the job would be assuming the greatest risk of forfeiture. Clearly, this kind of inequality was not what the legislature intended; therefore, the only rational conclusion is the legislature intended all subcontractors' mechanics' liens to attach when the general contractor's first work on a construction project began.

The subcontractors in this case cite the final sentence in K.S.A. 60-1101: "When two or more such contracts are entered into applicable to the same improvement, the liens of all claimants shall be similarly preferred to the date of the earliest unsatisfied lien of any of them."

Their argument is that, since subcontractors are entitled to mechanics' liens "in the same manner and to the same extent as the original contractor," K.S.A. 1990 Supp. 60-1103, then subcontractors' mechanics' liens should be "similarly preferred to the date of the earliest unsatisfied lien." K.S.A. 60-1101. Since the effect of this interpretation is identical to the interpretation reached above after considering the statute's history, we find the subcontractors' argument is meritorious.

Because we do not find error in regard to Central Life's and Sun's complaints challenging the validity of the liens filed by Walters Construction and all subcontractors, and because their complaints regarding the trial court's determinations on priority of all liens do not establish error, there is no ground for reversal of the trial court. The appellants have not borne their burden to affirmatively establish error.

Affirmed.