No. 48,095

LENEXA STATE BANK & TRUST COMPANY, *Appellant,* v. THOMAS R. DIXON, *et al., Appellees.*

PETZOLD DEVELOPMENT CO., INC., *Appellee,* v. LENEXA STATE BANK & TRUST COMPANY, *Appellant,* and THOMAS R. DIXON, *et al., Appellees.*

(599 P. 2d 776)

Opinion filed January 7, 1977.

*Richmond M. Enochs,* of Wallace, Saunders, Austin, Brown and Enochs, of Overland Park, argued the cause and was on the brief for the appellant.

*Roy G. Lowe,* of Lowe, Terry and Roberts, of Olathe, argued the cause, and *Frederick Farmer,* of the same firm, was with him on the brief for the appellees Elton Meireis and Marvin Scott.

The opinion of the court was delivered by

Foth, C.: The question in this case is the effect of a mortgage foreclosure action, resulting in a judicial sale, on the rights of four junior mechanics' lienholders who were not parties to the foreclosure suit. The trial court held that the mechanics' liens were unaffected by the prior foreclosure, and ordered that they be foreclosed by a second sale. The mortgagee, who had purchased the property at the mortgage foreclosure sale, has appealed.

The mortgagee, Lenexa State Bank and Trust Company, made a series of loans to Mr. and Mrs. Thomas R. Dixon to finance the purchase of a number of tracts in Johnson county, and for the construction of houses on two of them, lots 2 and 3 in Fox Run addition. It took purchase money mortgages which were filed February 8 and February 23, 1973, and construction loan mortgages filed March 18, 1973.

The four mechanic's lien claimants, Elton Meireis, Marvin Scott, Donald Staten, and Petzold Development Co., Inc., each furnished labor and materials at various times beginning in 1973 and ending in March, 1974, on the two tracts in litigation. Each filed a timely lien statement, the earliest on December 4, 1973, and the latest May 9, 1974. It is stipulated that each claimant has a valid lien. It is also stipulated that the bank's mortgages were filed prior to the commencement of any construction work on the lots in question.

On November 2, 1973, the bank filed its foreclosure action. None of the lien statements had been filed at that time, and none of the lien claimants were made parties to the action. A decree of foreclosure was entered April 4, 1974. The Staten and Meireis lien statements were of record at that time; the Meireis statement had also been served on the bank, but had been misplaced.

On June 8, 1974, the first notice of the sheriff's sale was published. All four liens were of record by then. The sale was set for July 3, 1974. On July 1 Petzold filed an action to foreclose its lien and to enjoin the impending sheriff's sale. Service was not made on the bank until July 5, and in the meantime the sale took place as scheduled. The bank was the successful bidder at $100,207.05, the amount of its judgment plus interest and costs.

The sale was confirmed on July 5, and the redemption period fixed at six months in accordance with the original decree.

The other three lien claimants were joined in the Petzold suit and each asserted his lien by cross-petition. The bank by separate answers denied the validity of all four lien claims, which totalled $6,134.00, and asserted that its title was superior to any of them by virtue of its mortgage foreclosure.

On September 4, 1974, the trial court granted a motion to consolidate the lien foreclosure suit with the prior mortgage foreclosure suit. It also granted a default judgment in favor of the lien claimants against all nonanswering parties. (The nature of this judgment appears nowhere in the record, and its existence is first recorded in the journal entry of judgment filed July 16, 1975, which recites that it is effective on filing.)

In June, 1975, the trial court heard the controversy between the bank and the lienholders on the pleadings, briefs, and a stipulation of facts. It concluded:

"1. Those who furnish improvements on real property or furnish labor or supplies on real property are given lien rights pursuant to K. S. A. 60-1101 et seq. and amendments thereto.

"2. That mechanic lien statutes are special statutes governing the rights of those affixing improvements or supplying materials on real property and are separate and distinct from general creditor lien pendant statutes.

"3. That a creditor may redeem property sold at a mortgage foreclosure proceeding during the last three months of the six month redemption period provided that the general creditor has obtained a judgment adjudicating the lien right prior to the expiration of the three month period.

"4. That a mechanic lien is in the nature of a lien in fact and the holder thereof has a prescribed statutory procedure to file the mechanic lien after the work or improvement has been placed on the property pursuant to K. S. A. 60-1102 as amended.

"5. That a mechanic lien holder must commence judicial foreclosure proceedings within one year after filing the lien and have the same adjudicated prior to subjecting the real property to a foreclosure sale.

"6. That there is a distinction between a general creditor adjudicated lien and a mechanic lien in fact. The former must redeem within the statutory period as a creditor in order to protect any interest in the real property to protect his lien right and the mechanic lien holder must first file the mechanic lien within the statutory period and secondly, must commence judicial proceedings as prescribed by law.

"7. That a mechanic lien in fact holder is not prejudice[d] in right to foreclose the lien unless the mortgagee joins such mechanic lien holder as a party defendant in the mortgagee foreclosure proceeding and the mechanic's lien interest is adjudicated in fact. The remedy for the mortgagee is to make an investigation and determine whether or not improvements have been made on the real property prior to the proceeding and to join such party as a party

defendant in the foreclosure action. By failing to do so, the mechanic lien holder does not lose his right to proceed to foreclose the mechanic's lien provided the lien is timely filed and foreclosed as provided by law."

Accordingly it rendered judgment foreclosing the four liens. An order of sale was entered, but was set aside pending this appeal.

The bank contends, as it has throughout, that the lienholders' sole remedy as admittedly junior lienors was to redeem in the mortgage foreclosure suit. It was therefore error, it says, for the court to order a second sale. The mechanics' lienholders, on the other hand, say that their liens were like any other junior liens existing when the foreclosure decree was entered, so that if the bank wished to foreclose against them it was required to join them as parties defendant. We think their analysis is sound, as a review of a few of the fundamental principles governing mechanics' liens will reveal.

First, in *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.*, 184 Kan. 202, 336 P. 2d 463, we took it as one of the "well-settled rules of this court" that "a lien for labor performed or material furnished in the construction or erection of improvements attaches from the date work or construction commences." (p. 204.) In this case that date was after the bank's purchase money mortgages were recorded, but prior to the mortgage foreclosure decree.

In the same case the court distinguished between a mere judgment creditor who parts with nothing in acquiring his judgment lien, and a mechanic's lienholder who gives value as his lien accrues. The court characterized a mechanic's lien as a "statutory mortgage," saying:

"We can see no fundamental difference between a statutory lien and a lien created by a mortgage. Each arises as a result of a contract with the owner of the property. Under G. S. 1949, 60-1401 a mechanic's lien is security for a debt and is an encumbrance in the nature of a statutory mortgage founded upon consent, under which the holder parts with a valuable consideration. [Citations omitted.] . . ." (p. 207.)

Finally, as long ago as *Warden v. Sabins*, 36 Kan. 165, 12 Pac. 520, we held that a mechanic's lien which has attached is good against a subsequent purchaser for value and without notice, even though no lien statement is filed until after the conveyance. The court there noted that "[i]n adopting this rule, no injustice is done to the purchaser, as the work itself, or the material furnished, is notice to all of the mechanics' or material-men's claims." (p. 169.)

Taken together the propositions are: a mechanic's lien attaches when work first commences; in the eyes of the law the lien is a

statutory mortgage; and the work itself puts those who later deal with the property on notice of its existence. In this case the mechanics' liens had attached when the bank foreclosed; they had the same status as junior mortgages; and the bank was bound to take notice of their existence.

The rights of a junior mortgagee who was omitted from the foreclosure of a first mortgage were determined in *Stacey v. Tucker*, 123 Kan. 137, 254 Pac. 339:

"Where a senior mortgagee brought suit, foreclosed his mortgage and purchased the property at sheriff's sale, not having made a junior mortgagee a party: *Held,* (*a*) the junior mortgagee's rights were not affected by the proceedings; (*b*) the junior mortgagee was not barred for failure to redeem the land, and an action by the senior mortgagee afterwards to quiet title against the junior mortgagee was of no avail." (Syl. 1.)

In that case, as here, the first mortgagee contended that the junior lienholders "had the right to redeem from the sale, and not having done so are barred because the land once sold on order of sale is not again liable for sale to satisfy a junior lien." (p. 138.) The argument was based on cases construing the precursors of our present redemption statutes, and in particular the nonresale statute, G. S. 60-3460, now K. S. A. 1975 Supp. 60-2414 (*o*):

"Real estate once sold upon order of sale, special execution or general execution shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem within the six (6) months as hereinbefore provided."

The court rejected the first mortgagee's contention, saying:

"The statutes and cases cited above are not applicable here, because the rights of the junior mortgagee were not adjudicated. The junior mortgagees were not parties to the foreclosure proceedings. We are of opinion that the legislature in the enactment of the statutes above cited contemplated liens adjudicated as such, and this court, in construing such statutes, considered the rights of lienholders which had been determined—those about which there was no question. The question might very properly arise as to whether a junior mortgage was a lien, whether it had been paid, or whether barred by the statute of limitations, etc., therefore there is always a question to be determined whether an alleged lien is actually a lien.

"A junior mortgagee is not a necessary party to the foreclosure of a mortgage so far as the jurisdiction of the court to render a decree of foreclosure binding upon all the parties to the proceeding is concerned. He is, however, a necessary party in order to foreclose and bar any right of redemption he has in the property by virtue of his lien. *Unless made a party, his rights ordinarily are not affected by the decree of foreclosure.*" (pp. 138-9. Emphasis added.)

The court went on to hold that the second mortgagee had a right to foreclose, and the trial court erred in sustaining a demurrer to a petition seeking that relief. Under that holding the trial court's decision here is clearly correct.

The bank, however, relies on *McFall v. Ford*, 133 Kan. 593, 1 P. 2d 273, rehearing den. 133 Kan. 678, 3 P. 2d 463, as dictating a contrary result. In that case a bank had foreclosed on three pieces of property in three separate actions. A Mrs. Thomas held a second mortgage on one of the parcels and was a party to that action only. She received a personal judgment and one of foreclosure, but when the property was sold she recovered nothing. When her personal judgment was rendered it became a lien on the other two parcels, which were subject to the foreclosure actions to which she was not a party. The second and third parcels were later redeemed by the mortgagor's assignee; some eighteen months thereafter Mrs. Thomas sought to foreclose on those parcels. The trial court enjoined the sale on the basis of the nonresale statute, G. S. 60-3460, now K. S. A. 1975 Supp. 60-2414 (*o*), quoted above. This court, by a four to three decision, affirmed. The majority found that Mrs. Thomas was a creditor who had a right to redeem, and that redemption was her exclusive remedy.

The bank here reads *McFall* as saying that any junior lienholder, whether a party to the foreclosure action or not, must either bid at the foreclosure sale or redeem in order to protect himself. While the majority opinions do contain dicta which might be so construed, their validity was short-lived.

Six years later, in 1937, this court decided *Motor Equipment Co. v. Winters*, 146 Kan. 127, 69 P. 2d 23. In that case the first mortgagee foreclosed, but inadvertently omitted joining a junior mortgagee in the foreclosure suit through an abstracter's error, although the junior mortgage was duly recorded. After the mortgagor's assignee redeemed, the second mortgagee sought foreclosure. The trial court denied the foreclosure, based on the nonresale statute. This court reversed, holding that the junior mortgagee's rights were not affected by the foreclosure action to which it was not a party.

In the course of the opinion the court reaffirmed the declaration in *Stacey v. Tucker*, supra, that in the nonresale statute "the legislature contemplated by the use of the words 'lien inferior thereto,' not merely liens but 'liens adjudicated as such.'" (146 Kan. at 129.) To a contention that *Stacey* was overruled by *McFall* the court

responded by noting that Mrs. Thomas' inferior lien in *McFall* had been adjudicated in an action in which she was a defendant. The court went on:

". . . It was this inferior adjudicated lien of Mrs. Thomas' with which the McFall case was concerned. It was held the lands of the debtor were not again liable to sale to satisfy her adjudicated lien. Even on an adjudicated lien the McFall case was ruled by a four-to-three decision." (*Ibid.*)

It was suggested in *Winters* that the omitted mortgagee might have protected itself by bidding at the sale whether its lien was adjudicated or not—a suggestion made by the bank here. The court recognized that the junior mortgagee had a right to bid, but went on:

". . . Oh, yes, and so did any other stranger to the action. We are not concerned here with a mere right to bid. We are concerned with appellant's right to bid under such circumstances as would protect a just and valid lien. . . .

". . . Appellant not having been made a party to the suit and no foreclosure judgment having been rendered on its second mortgage, how could it have protected its lien by bidding at the sale? Its bid would have been that of a complete stranger to the action and it would have been entitled to no credit on its bid by virtue of its mortgage." (pp. 131-2.)

The court went on to point out that any amount bid in excess of the senior mortgage and costs would go to the mortgagor. In the event of redemption, the junior lienholder who purchased at the sale would get its purchase money back, but its lien would be extinguished while remaining unpaid.

By the same token, the court noted, the mere right to redeem affords only illusory protection to an omitted junior lienholder. If a small first mortgage were foreclosed without joining the holder of a large second mortgage, the owner could redeem during his exclusive redemption period and leave the second mortgagee "entirely without recourse." (p. 132.)

The court rejected any such result, saying:

"On the other hand, had appellant been made a party to the action as it should have been, its mortgage would have been adjudicated, it would have been entitled to have the amount of its judgment credited on its bid, and in the event of redemption its lien would have been paid. That, we think, was the intention of the legislature. That is consonant with fair dealing. That requires the property to stand good only for the amount it was pledged to secure. It gives to a junior lienholder only that to which he is justly entitled and prevents unjust enrichment of the owner at the expense of a junior lienholder." (*Ibid.*)

The court went so far as to suggest that due process requires that a junior lienholder be joined if his rights are to be affected, and concluded:

"The first mortgage-foreclosure proceeding adapted to the nature of the lien interests required the presence of the holder of the inferior lien. By the very nature of the inferior lien *it could be protected with certainty only by its holder purchasing the property at sheriff's sale.* In the very nature of the first mortgage-foreclosure action, no prior adjudication of appellant's inferior lien having been had, *an adjudication of that lien was essential to its protection under a bid at sheriff's sale.* Upon what reasonable basis can it then be said the legislature intended to bar a resale of the land on unadjudicated inferior liens? We conceive of none. To hold otherwise is to decide that the legislature, by G. S. 1935, 60-3460, intended to destroy substantial rights of holders of inferior liens. The pertinent statutes, when considered with the well-known practice in mortgage foreclosures in this state, cannot logically be construed to evidence such a ruthless and destructive intent. *We think the legislature intended to bar the resale of land under an inferior lien only when that lien had been adjudicated and the holder of that judgment lien had neglected to protect it when he had an opportunity to do so at a previous sale.*" (146 Kan. at 134-5. Emphasis added.)

The court's further observation is particularly applicable here, where the junior liens are "statutory mortgages" (*Davis-Wellcome,* supra) rather than conventional mortgages:

". . . The mortgage, being only security for the debt, must be foreclosed by judicial proceedings as provided by law. *Others who also have a contractual and statutory lien on the property and whose rights would be prejudiced by not having their liens adjudicated are,* as we have herein previously indicated, *entitled by statute to be made parties defendant in such foreclosure proceedings.*" (p. 136. Emphasis added.)

And finally, to remove any doubts that might still linger as a result of *McFall,* the court observed:

"We are mindful of the fact that language employed in some of our decisions has not left our interpretation of G. S. 1935, 60-3460, entirely free from doubt. It is more important our interpretation should be clear than that it should meet with universal agreement. In view of this fact language heretofore employed, inconsistent with the distinction herein made as to adjudicated and unadjudicated liens, is hereby overruled." (p. 137.)

The upshot of the three cases is that in order to bar a junior lienor from foreclosing his lien and securing a second sale, if his lien exists when the senior lien is foreclosed and the senior lienor is on notice of its existence, the junior lienor must be made a party to the suit in which the senior lien is foreclosed. In that way the validity of the junior lien can be established and its priority determined—*i. e.,* the lien can be "adjudicated." If that is done the

junior lienor may make a meaningful bid at the foreclosure sale or he may redeem. If he does neither he has lost his opportunity to protect his lien, for under the nonresale statute he cannot secure a second sale.

In this case the bank seeks to distinguish *Winters* on the grounds that the junior lien there was a recorded mortgage, while here the junior liens were unrecorded statutory liens. The distinction fails, as we see it, under the rule of *Warden v. Sabins,* supra, that the very existence of the improvements is "notice to all" of the existence of the liens. A prospective purchaser of improved real estate is invariably warned in his title opinion to make a physical examination of the property to ascertain whether there has been recent work which might constitute a lien, even though a lien statement is not on file. The trial court's findings, quoted above, require a foreclosing mortgagee to make the same investigation. We cannot see how the requirement poses any undue burden on a mortgagee.

The bank also urges that the default judgment of September 4, 1974, against the nonanswering defendants in the lien foreclosure action constituted an "adjudication" of the mechanics' liens. Hence, it argues, the junior lienors had some four months before the redemption period expired during which they held adjudicated liens, during the last three of which they had a right to redeem.

There are at least three things wrong with this argument. First, whatever may have been the judgment against the nonanswering defendants, as against the bank there was no adjudication that the liens were valid. The bank in its answers had denied the validity of the liens, and that issue was undetermined until the judgment now appealed. Second, the default judgment itself was incorporated only in the journal entry, which was to become effective on filing. No entry in the appearance docket or other document appears in the record which would give the default judgment any effective date prior to the filing date of July 16, 1975. See K. S. A. 60-258 (*b*); *Brown v. Brown,* 218 Kan. 34, 542 P. 2d 332, and cases cited therein. And most importantly, the "adjudication," even if effective September 4, would have been too late to give the claimants effective protection. The chance to make a meaningful bid had long passed and, as *Winters* so forcefully points out, "By the very nature of the inferior lien it could be protected with certainty only by its holder purchasing the property at sheriff's sale." (146 Kan. at 134.)

We conclude, then, that the trial court was correct when it re-

fused to discharge these liens and instead entered judgment foreclosing them. They were in existence at the time of the bank's mortgage foreclosure, and the bank was on at least constructive notice of their existence. If it wished to foreclose them it was incumbent on it to join their holders in its foreclosure suit.

A final note. In *Stacey v. Tucker,* supra, the court recognized and cited numerous cases for the familiar principle that when a first mortgagee purchases the fee, at a foreclosure sale or otherwise, there may or may not be a merger of the two estates according to the intent and interests of the mortgagee-purchaser. It was held in that case that there was no merger, since it was to the mortgagee's advantage to preserve the senior lien and he presumably intended to retain that advantage. Hence the junior mortgage was not advanced to a first lien by reason of the first foreclosure. In *Winters,* the court expressly declined to rule on whether the omitted second mortgage had advanced to a first priority, since the holder had not sought foreclosure as a first lien. All that was in issue in *Winters* was whether the second mortgage had been discharged by the foreclosure of the first, or whether it still remained a valid lien. The holding was simply that the lien was still good and could be foreclosed. Here, likewise, we are presented with no issues of priority. The judgment below is only that the mechanics' liens are valid and may be foreclosed by sale. That judgment is correct and is affirmed.

APPROVED BY THE COURT.