(64 P.3d 456)
No. 89,044

DAVIS ELECTRIC, INC., *Appellee*, v. SHANE SHOWALTER, d/b/a STEEL MILL BAR and GRILL; STEEL MILL BAR and GRILL, LLC; SUSAN WEBB, *Defendants*, and SECURITY STATE BANK OF SCOTT CITY, KANSAS, *Appellant*, and NORTH AMERICAN TURF, LLP; BT PLUMBING, INC.; UNGERS HEATING AND AIR CONDITIONING, INC.; WARDS GARDEN CITY, INC.; LANOGA CORPORATION Through Its Subdivision, UNITED BUILDING CENTERS of GARDEN CITY, KANSAS; *Appellees*, and KLOTZ SAND COMPANY, INC.; and MIDWEST STEEL, INC., *Defendants*.

Opinion filed February 28, 2003.

*John Shirley* and *Keen K. Brantley*, of Wallace, Brantley & Shirley, of Scott City, for appellant.

*E. Edward Brown*, of Calihan, Brown, Burgardt, Wurst & Daniel, P.A., of Garden City, for appellee Davis Electric, Inc.

*John M. Lindner*, of Lindner & Marquez, of Garden City, for appellees BT Plumbing, Inc., Ungers Heating and Air Conditioning, Inc., and Wards Garden City, Inc.

*Charles E. Owen, II*, of Charles E. Owen, II, P.A., of Garden City, for appellee Lanoga Corporation.

Before KNUDSON, P.J., BRAZIL, S.J., and BUCHELE, S.J.

KNUDSON, J.: In a foreclosure proceeding, Security State Bank of Scott City (Security) appeals the trial court's finding that the liens of contractors and suppliers were preferred to June 21, 2000, the day before Security filed its second mortgage securing a note for $295,000.

The facts are not in material dispute. Shane Showalter was building the Steel Mill Bar and Grill in Garden City, Kansas. Davis

Electric, Inc. (Davis) entered into a contract with Showalter to do the wiring and provide other electrical work. Davis began working at the project on June 21, 2000. On September 18, 2000, Showalter paid Davis for all work and material furnished through August 29, 2000. Davis was thereafter uncompensated for its continuing performance under the contract through December 29, 2000, and on February 1, 2001, filed its lien under K.S.A. 60-1101.

The issue on appeal is whether June 21, 2000, is the "date of the earliest unsatisfied lien" under K.S.A. 60-1101. If it is, the trial court did not err.

Interpretation or construction of a statute is a question of law. Our standard of review is de novo. See *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

K.S.A. 60-1101 provides:

"Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a contract with the owner or with the trustee, agent or spouse of the owner, shall have a lien upon the property for the labor, equipment, material or supplies furnished, and for the cost of transporting the same. The lien shall be preferred to all other liens or encumbrances which are subsequent to the commencement of the furnishing of such labor, equipment, material or supplies at the site of the property subject to the lien. When two or more such contracts are entered into applicable to the same improvement, the liens of all claimants shall be similarly preferred to the date of the earliest *unsatisfied* lien of any of them." (Emphasis added.)

In 1977, the word "unsatisfied" was added to the statute. L. 1977, ch. 203, § 1. It is as a result of this amendment that Security contends Davis' lien priority would not begin on June 21, 2000.

There is no question that before the 1977 amendment a mechanic's lien attached from the date work or construction commenced. See *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.*, 184 Kan. 202, 208, 336 P.2d 463 (1959). And, after the amendment, our court has noted: "Where a lien is perfected in the manner statutorily prescribed, it is deemed to have attached as of the date the claimant first furnished materials." *Construction Materials, Inc. v. Becker*, 8 Kan. App. 2d 394, 398, 659 P.2d 243, *rev. denied* 233 Kan. 1091 (1983).

We find helpful an early case that, in part, considered interpretation of R.S. 1923, 60-1401, the forerunner to K.S.A. 60-1101. In *Southwestern Electrical Co. v. Hughes*, 139 Kan. 89, 30 P.2d 114 (1934), the mortgage company claimed the amount of the supplier's lien should be reduced to the amount of materials that were furnished within 4 months of the filing of the lien. In rejecting this claim, the court found there was a continuous running account under a single contract, so the supplier's lien should be given priority. 139 Kan. at 93.

In ascertaining legislative intent, we must give effect to the entire statute and reconcile different provisions so as to make them consistent, harmonious, and sensible. *State v. Engles*, 270 Kan. 530, 533, 17 P.3d 355 (2001).

We believe Security's reliance on the 1977 amendment to argue the legislature intended a quantum change in the lien law of this state is misplaced. K.S.A. 60-1101 explicitly mandates: "The lien shall be preferred to all other liens or encumbrances which are subsequent to the commencement of the furnishing of such labor, equipment, material or supplies at the site of the property subject to the lien."

There is no legislative history that explains the 1977 amendment. We speculate that it was intended to preclude unpaid lienholders from claiming a priority date based upon the prior date of a fully paid lienholder. Regardless, the amendment cannot reasonably be interpreted to modify the priority date of a contractor working under a single contract that has not been paid in full. Any other conclusion would allow Security to reap the benefits of improvements upon the real property to the detriment of materialmen and suppliers, who through their labors, had increased the value of the property.

Finally, we state the obvious. Security could have protected its interests by requiring lien waivers. For unexplainable reasons, it failed to do so.

We conclude the trial court correctly interpreted K.S.A. 60-1101 and decided the statutory liens were preferred to Security's second and third mortgages.

Affirmed.