(79 P.3d 184)
No. 89,924

MUTUAL SAVINGS ASSOCIATION, *Plaintiff/Appellee,* v. RES/COM PROPERTIES, L.L.C.; HEARTLAND BUILDING AND DEVELOPMENT, L.L.C., n/k/a ROCKWOOD CUSTOM HOMES, LLC; LARRY SLAVENS; L.J. SLAVENS; and CHAD SLAVENS, *Defendants,* LRM INDUSTRIES, INC. and MODERN ENGINEERING UTILITIES COMPANY, INC., *Appellants,* BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY; and CITY OF EUDORA, KANSAS, *Defendants.*

Opinion filed November 14, 2003.

*Bradley R. Finkeldei* and *Webster L. Golden,* of Stevens & Brand, L.L.P., of Lawrence, for appellants LRM Industries, Inc., and Modern Engineering Utilities Company, Inc.

*Richard W. Byrum, Julie Gibson, Frank Wendt*, and *G. Steven Ruprecht*, of Niewald, Waldeck & Brown, of Kansas City, Missouri, for appellee Mutual Savings Association.

Before RULON, C.J.; LEWIS, J., and WAHL, S.J.

RULON, C.J.: This appeal involves the relative priority of four unsatisfied liens filed on the foreclosure property known as Whispering Meadows development in Eudora, Kansas. Before the development was completed, the property owner, Res/Com Properties, L.L.C. (Res/Com), defaulted on its payment obligations under two mortgages and various construction contracts. The mortgages were held by Mutual Savings Association (Mutual), the appellee in the present action. The construction contracts on which Res/Com defaulted were performed by The Peridian Group (Peridian), LRM Industries, Inc. (LRM), and the Modern Engineering Utilities Company, Inc. (Modern).

On cross-motions for summary judgment, the trial court found that appellee Mutual's first note and mortgage had priority over the subsequent liens of appellants LRM and Modern. LRM and Modern appeal from such ruling.

Res/Com Properties is a Kansas limited liability company in which Larry Slavens, Chad Slavens, and L.J. Slavens have equal membership. Heartland Building and Development, L.L.C., is a Kansas limited liability company in which the Slavens also have equal membership.

The material facts are undisputed. A chronological review of the facts is necessary for our analysis.

In July 1999, George Kritos contracted with Peridian to provide design and engineering services on the subject property. The work included boundary verification, topographical surveying, preparing preliminary and final site development plans, platting, storm water drainage studies, sanitary sewer design, street and storm sewer design, and water line design. The on-site work consisted of surveying, staking the boundary corners, staking of preliminary layouts for utilities and streets, plus horizontal control and vertical control benchmark staking used for sewer, street, and storm water designs. Peridian's work began prior to May 22, 2000.

On May 22, 2000, Res/Com purchased the property from Kritos. That same day, Res/Com signed a $570,000 promissory note and related mortgage in favor of Mutual. Mutual recorded its mortgage on May 24, 2000. Res/Com used the money to purchase the subject property. Peridian then contracted with Res/Com to continue its design and engineering services.

On June 28, 2000, Res/Com executed a second note with Mutual for $80,300.

On July 7, 2000, Modern began installing the sanitary sewers on the subject property under a subcontract with Heartland. Heartland was Res/Com's general contractor on the project.

On July 19, 2000, Res/Com executed and delivered to Mutual a second mortgage to secure the second note. The mortgage was filed July 20, 2000.

On August 30, 2000, LRM entered into two contracts with Heartland to construct improvements on the subject property. LRM worked on the property from September through November 2000.

On October 26, 2000, Peridian filed its mechanic's lien. LRM filed its mechanic's lien on December 18, 2000, and while it is unclear if or when Modern filed its original mechanic's lien, clearly Modern filed an amended lien on December 19, 2000. On March 15, 2001, Peridian filed an amended mechanic's lien. On or about March 15, 2001, Mutual paid Peridian for its work and took assignment of Peridian's lien. Mutual then filed a release of the Peridian lien.

Res/Com subsequently defaulted on both notes to Mutual, and on September 28, 2001, the district court granted Mutual summary judgment against Res/Com and allowed Mutual to foreclose on the property. The court further ruled the Slavens must pay Mutual all amounts due and owing under the first and second notes and mortgages.

When summary judgment order was entered, there were two unsatisfied mechanics' liens on the property. These were the liens held by LRM and Modern.

Mutual then sought summary judgment, seeking priority for its first note and mortgage over the LRM and Modern liens. LRM

filed a cross-motion for summary judgment on the issue of priority, arguing their liens related back to the time Peridian first began work on the property. The district court entered judgment in favor of Mutual. The court found that LRM's and Modern's subsequent liens were not entitled to priority by "relating back" to Peridian's preliminary staking of the subject property and off-site design and engineering work.

LRM and Modern appeal from the ruling of the district court.

Our standard of review on a motion for summary judgment is as stated in *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002). Resolution of the issues on this appeal require the interpretation of K.S.A. 60-1101 and K.S.A. 2002 Supp. 60-1103. Interpretation of a statute is a question of law subject to unlimited review. *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003).

K.S.A. 60-1101, entitled "Liens of contractors; priority" states:

"Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a contract with the owner or with the trustee, agent or spouse of the owner, shall have a lien upon the property for the labor, equipment, material or supplies furnished, and for the cost of transporting the same. The lien shall be preferred to all other liens or encumbrances which are subsequent to the commencement of the furnishing of such labor, equipment, material or supplies at the site of the property subject to the lien. When two or more such contracts are entered into applicable to the same improvement, the liens of all claimants shall be similarly preferred to the date of the earliest unsatisfied lien of any of them."

K.S.A. 2002 Supp. 60-1103, entitled "Liens of subcontractors; procedure, recording and notice, owner's liability" states, in part:

"(a) *Procedure*. Any supplier, subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, subcontractor or owner contractor may obtain a lien for the amount due in the same manner and to the same extent as the original contractor . . . ."

Our Supreme court in *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, 170, 910 P.2d 839 (1996), noted:

"Our mechanic's lien law is remedial in nature, enacted for the purpose of providing effective security to any persons furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property under a contract with the owner. The theory underlying the granting of a lien against the property is that the property improved by the labor, equipment, material, or supplies should be charged with the payment of the labor, equipment, material, or supplies.

"At the same time, a mechanic's lien is purely a creation of statute, and those claiming a mechanic's lien must bring themselves clearly within the provisions of the authorizing statute. *Kansas City Heartland Constr. Co. v. Maggie Jones Southport Cafe, Inc.*, 250 Kan. 32, 34, 824 P.2d 926 (1992). The statute must be followed strictly with regard to the requirements upon which the right to lien depends. *Schwaller Lumber Co., Inc. v. Watson*, 211 Kan. 141, Syl. ¶ 2, 505 P.2d 640 (1973). However, because the statute is remedial and designed for the benefit and protection of persons designated by the act, once a lien has been found to have attached, the law is to be liberally construed in favor of such claimant. See *Holiday Development Co. v. Tobin Construction Co.*, 219 Kan. 701, 704-05, 549 P.2d 1376 (1976)."

There is a dispute as to which statute applies to which entities before this court. LRM argues K.S.A. 2002 Supp. 60-1103 applies to Peridian, as well as to Modern and LRM, as all three were subcontractors. In support, LRM cites to the fact the district court found Larry Slavens dealt with third parties interchangeably as Res/Com, Heartland, and as an individual. Mutual did not cross-appeal such finding. Further, the invoices from Peridian show Larry Slavens as the client, and there was deposition testimony reflecting the fact Peridian saw no distinction among the entities of Res/Com, Heartland, and Slavens. Mutual argues K.S.A. 2002 Supp. 60-1103 applies only to LRM and Modern, as such were subcontractors under contract with Heartland, the general contractor, and K.S.A. 60-1101 applies to Peridian, as it was a contractor under contract with the owner, Res/Com.

Regardless, the posture of the parties may be a distinction without a difference as subcontractors' liens attach at the time the general contractor began work or construction. Contractors' liens attach when there has been a furnishing of labor, equipment, material, or supplies used or consumed for the improvement of the property. The liens of all contractors and subcontractors are similarly preferred to the date of the earliest unsatisfied lien.

In *J. Walters Constr. Co. v. Greystone South Partnership*, 15 Kan. App. 2d 689, 817 P.2d 201 (1991), this court reviewed the relationship between K.S.A. 60-1101 and K.S.A. 2002 Supp. 60-1103. After considering the history of the statutes, we concluded the legislature intended subcontractors' mechanics' liens to attach at the time the general contractor began work or construction. 15 Kan. App. 2d at 703. We reasoned:

"If the legislature did not intend all mechanics' liens, contractors' and subcontractors' liens alike, to attach at the same time, then the only other reasonable interpretation would be that liens attach at the time each contractor or subcontractor began work on the project. Under that interpretation, there would be no reason to pay lien claimants 'in proportion to the amount due each' under K.S.A. 60-1109, because their liens would attach on different determinable dates, and payment could be made on the basis of chronological priority. Under that system, the first on the job would be the first paid, and the last on the job would be assuming the greatest risk of forfeiture. Clearly, this kind of inequality was not what the legislature intended; therefore, the only rational conclusion is the legislature intended all subcontractors' mechanics' liens to attach when the general contractor's first work on a construction project began." 15 Kan. App. 2d at 703-04.

The *Greystone* court ultimately held that because subcontractors are entitled to mechanics' liens "in the same manner and to the same extent as the original contractor" under K.S.A. 2002 Supp. 60-1103, then subcontractors' mechanics' liens should be "similarly preferred to the date of the earliest unsatisfied lien" under K.S.A. 60-1101. 15 Kan. App. 2d at 704.

Under the facts before us, the status of Peridian as a subcontractor or contractor is immaterial. The central issue on appeal is when and if Peridian's work, done prior to Mutual's mortgage, became lienable and attached. If Peridian's on-site surveying and staking and off-site designing and planning, done prior to Mutual's mortgage being filed, were not lienable or had not attached, LRM and Modern's liens could only relate back to when Modern began work, which was subsequent to Mutual's mortgage. The effect of such would be that Mutual would have priority, and the district court's grant of summary judgment was proper.

Initially, a mechanic's lien which has attached is superior to any subsequent purchaser for value and without notice, even if no lien

statement is filed until after the conveyance. The work itself constitutes notice to the world of the existence of the lien. *Lenexa State Bank & Trust Co. v. Dixon,* 221 Kan. 238, 241, 599 P.2d 776 (1977). As such the fact Peridian's work was done prior to Res/Com actually becoming the owner of the property is not in and of itself a bar to LRM's and Modern's claims of priority. However, for LRM and Modern to prevail, Peridian's "pre-mortgage" work must have attached to the property. Under K.S.A. 60-1101, "[i]n order for a mechanic's lien for labor and materials to attach, such items must be used or consumed for the improvement of real property, and thus become part of the realty itself." *Benner-Williams, Inc. v. Romine,* 200 Kan. 483, 485, 437 P.2d 312 (1968).

In *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.,* 14 Kan. App. 2d 714, 798 P.2d 511, *rev. denied* 248 Kan. 996 (1990), the sole issue was whether architectural and engineering services constituted lienable labor resulting in an improvement to real property within the meaning of K.S.A. 60-1101 when construction was never commenced and there appeared no visible or physical manifestation of work on the property. 14 Kan. App. 2d at 717. The *Mark Twain* court specifically refused to address the issue of whether a mechanic's lien can ever attach for off-site architectural and engineering services if construction is commenced and, if a lien can attach, what priority it would be given. 14 Kan. App. 2d at 720.

However, the *Mark Twain* court, interpreting the term "improvement" as contained in K.S.A. 60-1101, reasoned the rationale for allowing a lien was to afford security to persons designated in the statute who have done acts described in the statute. "The requirement of visible activity on the site serves to put the world on notice of the rights of those who furnish labor or materials for the improvement. When no construction begins, no visible evidence of possible liens exists." 14 Kan. App. 2d at 720. Although not defined in K.S.A. 60-1101, "improvement" is generally defined as a physical addition made to real property that enhances the value of the land. See 14 Kan. App. 2d at 720, and the cases cited therein.

"To allow a lien to attach where there is no visible effect on the real estate is contrary to the reason mechanics' liens are given priority over other liens that are

subsequent to the commencement of the work improving the property. See K.S.A. 60-1101. To allow a lien where the property was not visibly improved by the labor provided would require an amendment to the present mechanic's lien statute. [Citation omitted.]" 14 Kan. App. 2d at 721.

Subsequent to *Mark Twain*, however, our Supreme Court in *Haz-Mat Response, Inc.*, 259 Kan. 166, clarified the test to be used in determining what types of activity were and were not lienable.

The *Haz-Mat* court noted that the statutory phrase "improvement of real property" is not defined in the Kansas statute. The only reported Kansas case construing the requirement was *Mark Twain*, 14 Kan. App. 2d 714. The *Haz-Mat* court went on to discuss the *Mark Twain* case and concluded that *the cases cited in Mark Twain did not support the conclusion that there must be visible effect on the real property for the work to be lienable.* While "improvement" is generally defined as any physical addition made to the real property that enhances the value of the land, there is no requirement under our present law that there be a physical addition made to real property. See *Benner-Williams, Inc. v. Romine*, 200 Kan. 483, 437 P.2d 312 (1968). Further, improvement is not necessarily synonymous with enhancement of market value. *Haz-Mat*, 259 Kan. at 171-72.

After reviewing a number of prior Kansas cases as well as cases from other states dealing generally with the meaning of the phrase "improvement of real property," the *Haz-Mat* court devised seven (7) considerations for determining if an activity is considered to improve real property.

"(1) What is or is not an improvement of real property must necessarily be based upon the circumstances of each case; (2) improvement of the property does not require the actual construction of a physical improvement on the real property; (3) the improvement of real property need not necessarily be visible, although in most instances it is; (4) the improvement of the real property must enhance the value of the real property, although it need not enhance the selling value of the property; (5) for labor, equipment, material, or supplies to be lienable items, they must be used or consumed and thus become part of the real property; (6) the nature of the activity performed is not necessarily a determining factor of whether there is an improvement of real property within the meaning of the statute; rather, the purpose of the activity is more directly concerned in the determination of whether there is an improvement of property which is thus lienable; and (7) the furnishing of labor, equipment, material, or supplies used or consumed for the

improvement of real property may become lienable if established to be part of an overall plan to enhance the value of the property, its beauty or utility, or to adapt it for a new or further purpose, or if the furnishing of labor, equipment, material, or supplies is a necessary feature of a plan of construction of a physical improvement to the real property." 259 Kan. at 175.

Finally, the *Haz-Mat* court adopted the Black's Law Dictionary definition of the phrase "improvement of real property" as it is used in K.S.A. 60-1101: "A valuable addition made to real property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." 259 Kan. at 175-76 (citing Black's Law Dictionary 757 [6th ed. 1990]). As we understand, *Haz-Mat* disapproved of *Mark Twain's* holding that improvement to the property must be visible before the work can be lienable.

Here, the first issue is whether Peridian's preliminary staking and surveying, done prior to Mutual's mortgage, constituted an "improvement" as used in K.S.A. 60-1101. Applying the considerations set out in *Haz-Mat*, we conclude Peridian's efforts were lienable. It is undisputed that the labor and capital expended in the surveying and staking work done by Peridian were actually used in the development of the property. This record is silent as to whether stakes installed by Peridian were still on the property at the time Mutual's mortgages were filed, but this is irrelevant under the *Haz-Mat* test. If they were in fact visible, this lends further support to the subcontractors' claim.

The next issue is, if Peridian's work is lienable, when did that lien attach. Once again K.S.A. 60-1101 reads in relevant part:

"The lien shall be preferred to all other liens or encumbrances which are subsequent to the *commencement of the furnishing of such labor, equipment, material or supplies at the site of the property subject to the lien.* When two or more such contracts are entered into applicable to the same improvement, the liens of all claimants shall be similarly preferred to the date of the earliest unsatisfied lien of any of them." (Emphasis added.)

K.S.A. 2002 Supp. 60-1103 reads:

"(a) *Procedure.* Any supplier, subcontractor or other person *furnishing labor, equipment, material or supplies, used or consumed at the site of the property*

*subject to the lien,* under an agreement with the contractor, subcontractor or owner contractor *may obtain a lien for the amount due in the same manner and to the same extent as the original contractor . . . ."* (Emphasis added.)

The question is what is meant by *commencement of the furnishing of such labor, equipment, material, or supplies at the site of the property subject to the lien.*

Here, the district court properly found that under the reasoning in *Haz-Mat,* the off-site engineering and design work done by Peridian was no doubt lienable. However, the district court went on to find, citing *Mark Twain,* that the lien did not attach until the plans drawn up by Peridian were actually "used or consumed" at the site, *i.e.,* the lien did not attach until Modern used the plans to install the sanitary sewers. The district court further found that the preliminary surveying and/or staking done at the site by Peridian before May 22, 2000, was used for preparation of plats, designs, and other paperwork and was not sufficient to be deemed work used or consumed at the site because the work did not become "part of the real property" until the plans and drawings were actually used by Modern to begin construction. The district court appeared to draw a distinction between the staking Peridian completed and the more precise construction staking which subcontractors like Modern used in locating actual physical improvements. We disagree with such a distinction.

Once it is determined that the work performed is lienable, the plain language of K.S.A. 60-1101 only requires that for priority purposes, the subcontractor or contractor commence the furnishing of such labor, equipment, material, or supplies *at the site* of the property subject to the lien.

Of critical importance here is the fact that when the *Mark Twain* court concluded that there must be some physical improvement sufficient to put those who seek to acquire an interest in the land on notice that building has commenced, it was relying in part on language in *Mortgage Co. v. Weyerhaeuser,* 48 Kan. 335, 343, 29 Pac. 153 (1892). However, the *Weyerhaeuser* court was interpreting a prior version of the mechanic's lien statute that is significantly different than the modern version. In 1892, the mechanic's lien statute read in relevant part:

"Such liens shall be preferred to all other liens or incumbrances which may attach to or upon such land, buildings, or improvements, or either of them, subsequent to the *commencement of such building, the furnishing or putting up of such fixtures or machinery,* the planting of such trees, vines, plants or hedges, the building of such fence, footwalks, or sidewalks, or the making of such repairs or improvements." (Emphasis added.) G.S. 1889, § 630.

The *Weyerhaeuser* court noted that under G.S. 1889, ch. 80, § 630, commencement of the building meant digging the foundation, and earlier cases had held that survey staking was not sufficient for a lien to attach. 48 Kan. at 342. The *Weyerhaeuser* court concluded the "main purpose is to create an impression on the mind of any person who seeks to purchase or acquire an interest or lien in the land, the acts indicating that a building thereon is being commenced ought to consist of work of such character that a person of ordinary observation could determine that a building was in process of construction." 48 Kan. at 343.

The language in G.S. 1889, ch. 80, § 630 is considerably different from K.S.A. 60-1101, which for priority purposes merely requires that "[t]he lien shall be preferred to all other liens or encumbrances which are *subsequent to the commencement of the furnishing of such labor, equipment, material or supplies at the site of the property* subject to the lien." (Emphasis added.) The prior version of the statutes placed the time of attachment as *upon the commencement of building.*

Similarly, our Supreme Court in *Lenexa State Bank & Trust Co. v. Dixon* addressed what effect a mortgage foreclosure action, resulting in a judicial sale, had on four junior mechanics' lienholders who were not parties to the foreclosure suit. Citing two prior cases, *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.,* 184 Kan. 202, 336 P.2d 463 (1959), and *Warden v. Sabins,* 36 Kan. 165, 12 Pac. 520 (1887), the *Dixon* court repeated the long-standing rule that a mechanic's lien attaches from the date work or construction commences. 221 Kan. at 241. However, the date the mechanics' liens attached was not at issue in *Dixon.* The sole issue was whether certain mechanics' liens, which had attached prior to the foreclosure, survived the foreclosure and subsequent judicial sale. There were no facts in that case indicating exactly what work or materials

were furnished by the holders of the mechanics' liens or when in the process of construction the labor and materials were supplied. The court expressly held that priority was not at issue and the only issue was whether the mechanics' liens were valid. 221 Kan. at 247.

The two cases cited by *Dixon* and *Mark Twain* were construing mechanics' lien statutes that contain the same language as G.S. 1889, ch. 80, § 630 construed in *Weyerhaeuser*. In *Warden v. Sabins,* the court was asked to construe Comp. Laws of 1879, ch. 80, art. 27, § 630, which reads in relevant part: "Such liens shall be preferred to all other liens and incumbrances which may attach to or upon such lands, buildings or improvements, or either of them, subsequent to the commencement of such building, the furnishing or putting up of such fixtures or machinery, . . . or the making of any such repairs or improvements." 36 Kan. at 168. The *Warden* court concluded that the time the lien is acquired is dependent on the provisions of the statute and that the work itself, or the materials furnished, were notice to all of a mechanic's or materialman's claim. 36 Kan. at 168-69.

In *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.,* our Supreme Court concluded that mechanics' liens attach on the date construction commences. The *Davis* court, however, was interpreting G.S. 1949, 60-1401, which as to priority reads substantially the same as the statutes in Comp. Laws of 1879, ch. 80, art. 27, § 630 and G.S. 1889, ch. 80, § 630: "Such lien shall be preferred to all other liens or encumbrances which may attach to or upon such land, building, or improvement, or either of them, subsequent to the *commencement of such building, the furnishing or putting up of such fixtures, or machinery,* the planting of trees, vines, plants or hedge, the building of such fence, footwalk, or sidewalk, or the making of any such repairs or improvements." (Emphasis added.)

We are convinced that none of the cases cited in *Mark Twain,* which are cited for the proposition that a lien cannot attach prior to the start of construction, were interpreting the current form of the statute.

Furthermore, the district court's interpretation here is contrary to the language in K.S.A. 60-1101. The statute provides that any person furnishing labor or materials used or consumed for the im-

provement of real property shall have a lien. K.S.A. 60-1101 does not read that any person that furnishes labor or material shall have a lien *at the time that labor or material is used or consumed at the site*. The trial court's interpretation of K.S.A. 60-1101 would be contrary to this court's decision in *J. Walters Constr. Co. v. Greystone South Partnership*, 15 Kan. App. 2d 689, 817 P.2d 201 (1991) and would mean that different subcontractors' liens would attach at different times, *i.e.*, when their work or materials were actually incorporated in the project, and priority would be based upon those dates.

It is undisputed that Peridian's work was used in the construction at the site. The question remains whether the surveying and staking Peridian did at the site was sufficient to cause its lien to attach. We acknowledge the Utah Court of Appeals' decision in *Ketchum, Konkel, et al. v. Heritage Mt.*, 784 P.2d 1217, 1227 (Utah App. 1989), cited by the district court, and the authorities cited therein, which held that under Utah law, placing survey stakes, preparing soil, leveling and grading and taking soil samples do not qualify as visible on-site improvements required to establish priority under Utah's mechanic's lien statutes. The Utah statute reads:

"The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, improvement or structure was commenced, work begun, or first material furnished on the ground; also over any lien, mortgage or other encumbrance of which the lien holder had no notice and which was unrecorded at the time the building, structure or improvement was commenced, work begun, or first material furnished on the ground." Utah Code Ann. § 38-1-5 (2003).

We note, however, that our sister states Colorado and Oklahoma have reached a contrary conclusion based on statutes that are somewhat different than the Kansas statutes, but very similar to those in Utah. In fact, the Utah statute at issue in *Ketchum* was based on the Colorado mechanic's lien statute. 784 P.2d at 1223.

In *Bankers Trust Company v. El Paso Pre-Cast Co.*, 192 Colo. 468, 473, 560 P.2d 457 (1977), the Colorado Supreme Court addressed the question of priority between the beneficiary of a deed

in trust and several mechanic's liens on the same piece of property. We note that in Colorado the statutes expressly include engineers and architects in the class of those eligible for mechanics' liens. 192 Colo. at 472-73.

In *El Paso Pre-Cast,* there was a dispute between several lien claimants and a bank which had made a loan to work on a project at an apartment complex. The lien claimants sought to have their liens relate back to the date an engineering firm and an architectural firm first began work on the project. The trial court ruled that all mechanic's liens related back to the time prior to the date the deed of trust was filed. The bank appealed. 192 Colo. at 471. On appeal, one of the arguments presented by the bank was that the date establishing priority was the date work commenced upon the structure or improvement. In this context, the bank argued work meant lienable work and commencement of work meant the start of actual on-site construction. Because the work of the architect or engineer done before the date the deed of trust was recorded was not done on the structure or improvement, such work was not lienable work, and on-site and actual construction did not begin until after the bank's deed of trust was filed. 192 Colo. at 472.

As to priority, Colo. Rev. Stat. § 38-22-106(1) (2003) reads in relevant part:

"All liens established by virtue of this article shall relate back to the time of the commencement of work under the contract between the owner and the first contractor, or, if said contract is not in writing, then such liens shall relate back to and take effect as of the time of the commencement of the work upon the structure or improvement, and shall have priority over any lien or encumbrance subsequently intervening . . . ."

The Colorado Supreme Court disagreed with the Bank, noting that the phrase "commencement of the work" is construed broadly in accord with the principle that mechanic's lien laws should be construed in favor of the lien claimants. The Colorado Supreme Court concluded that the architectural and engineering work performed did constitute commencement of work upon the structure or improvement under the statute. 192 Colo. at 473.

Similarly, in *Midland Mortgage Company v. Sanders England Investments*, 682 P.2d 748 (1984), the Oklahoma Supreme Court held that surveying by an engineering firm done prior to the recording of a mortgage was a superior lien to that of the mortgage lien. The Oklahoma statute in question reads in relevant part:

"Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, furnish material or lease or rent equipment used on said land for the erection, alteration or repair of any building, improvement or structure thereon or perform labor in putting up any fixtures, machinery in, or attachment to, any such building, structure or improvements; or who shall plant any tree, vines, plants or hedge in or upon such land; or who shall build, alter, repair or furnish labor, material or lease or rent equipment used on said land for building, altering, or repairing any fence or footwalk in or upon said land, or any sidewalk in any street abutting such land, shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances. . . ." Okla. Stat. tit. 42, § 141 (2002).

The Oklahoma Supreme Court noted that the mechanic's lien statute did not require that the labor performed for the erection of any building be part of the permanent construction of the building or that it be continuous or visible. 682 P.2d at 749. The court had previously defined the improvement of land as described in § 141 as including any and every character of improvement on realty and, therefore, the setting of survey pins, marking of boundaries, and surveying done prior to the filing of the mortgage was lienable, and the firm which did the surveying was entitled to a lien with priority over the mortgagee. 682 P.2d at 750.

In Kansas:

"The theory underlying the granting of a lien against the property is that the property improved by the labor, equipment, material, or supplies should be charged with the payment of the labor, equipment, material, or supplies." *Haz-Mat*, 259 Kan. at 170.

Based on the plain language of the Kansas statute, it is irrelevant at what point in the construction process that work was used or consumed. Further, it is undisputed that Peridian did staking work at the site. Again, the record is silent as to whether these stakes were still on the property when Mutual's mortgages were filed. While this may not have been as substantial as the staking required

to pour footings and foundation walls, the statute makes no such distinction. Peridian's work was just as necessary in the development of the project as the work of the dirt contractor digging the trenches for the foundation. We are convinced there is no reason to give preference to one type of subcontractor over another based on an arbitrary distinction of the relative worth of each.

Mutual argues that even if Peridian's work was lienable and attached prior to the date Res/Comm purchased the property, Peridian is still not the "earliest unsatisfied lien," under K.S.A. 60-1101 because Mutual paid Peridian for its work and took assignment of its lien. Therefore, at the time of the foreclosure, it argues its first note established its priority and Modern's work, which began in July 2000, was the earliest unsatisfied lien for the purposes of K.S.A. 60-1101. Mutual argues we should conclude that the district court came to the right conclusion albeit for the wrong reason.

First of all, the district court, because it ruled that Peridian's lien did not attach until Modern actually began constructing the sanitary sewers, did not reach the issue of when the phrase "earliest unsatisfied lien" is to be measured. However, as the facts are uncontroverted and this is purely a question of statutory interpretation, we will address it here.

As stated above, K.S.A. 60-1101 reads in relevant part: "When two or more such contracts are entered into applicable to the same improvement, the liens of all claimants shall be similarly preferred to the date of the earliest unsatisfied lien of any of them." What is meant by this sentence in the context of the mechanic's lien statutes is a question of statutory interpretation and thus our review is plenary. *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003).

Mutual cites to this court's recent decision in *Davis Electric, Inc. v. Showalter*, 31 Kan. App. 2d 318, 64 P.3d 456 (2003). In *Davis*, Shane Showalter set out to build a bar and grill in Garden City, Kansas. Davis Electric was contracted to do the electrical work. During construction, Showalter paid Davis for all the work and materials Davis had supplied as of that date. Davis continued to work on the property thereafter. Showalter apparently defaulted

on the financing and Security State Bank of Scott City later fore-closed on the project and asked the trial court to find that the bank's second mortgage had priority over the liens of the contrac-tors and suppliers. The district court held that the mechanics' lien holders had priority. On appeal, the question was whether the date Davis initially began work, June 21, 2000, was the date to be used to measure the "earliest unsatisfied lien" under K.S.A. 60-1101.

The *Davis* court held that because Davis had not been paid in full for its work subsequent to June 21, 2000, the date Davis initially began work was still the date establishing priority for all the other subcontractors under K.S.A. 60-1101. This court concluded that the language stating that all liens of claimants shall be similarly preferred to the date of the "earliest unsatisfied lien of any of them" was added in 1977 to preclude any unpaid lien holder from claiming priority based on the date a fully paid lien holder began work. However, when a lien holder, such as Davis, was working under a single contract and remained unpaid for a part of its work, then, absent a lien waiver, the date Davis originally began work remained the date on which the subcontractors' liens attached for priority purposes.

The situation here is factually different and *Davis* has limited applicability. Here, Peridian was an uncompensated lien holder at least up and until Mutual paid Peridian and took assignment of its lien in March, 2001. Unlike the situation in *Davis*, Peridian was paid in full by Mutual and did no additional work after it was paid. The question remains, at what time is "the earliest unsatisfied lien of any of them" measured?

Mutual urges this court to conclude that because Peridian was fully paid on March 15, 2001, the other mechanics' liens could not relate back to the time Peridian began work. LRM and Modern on the other hand, claim that K.S.A. 2002 Supp. 60-1103 mandates that all subcontractors' and contractors' liens attach at the same time and K.S.A. 60-1101 is not applicable under *Greystone*. We disagree with both parties.

When construing statutes, the following has long been the rule:

"Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different

provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted. [Citation omitted.]" *State v. Engles*, 270 Kan. 530, 533, 17 P.3d 355 (2001).

However, "[w]hen the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment. [Citation omitted.]" *Kaul v. Kansas Dept. of Revenue*, 266 Kan. 464, 471, 970 P.2d 60 (1998), *cert. denied* 528 U.S. 812 (1999). There is a presumption that the legislature does not intend to enact useless or meaningless legislation. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997).

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in it." *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001)

"In construing statutes and determining legislative intent, several provisions of an act or acts, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony if possible. [Citation omitted.]" *Petty v. City of El Dorado*, 270 Kan. 847, 852, 19 P.3d 167 (2001).

The only way to harmonize the two statutes is to hold that the date used to determine who was an unsatisfied lien holder for priority purposes, is the date when Mutual filed its mortgage from Res/Com. On the date Mutual filed its first mortgage securing the note from Res/Com, Peridian was an unsatisfied lien holder. As such, all contractors' and subcontractors' liens were perfected as of the date Peridian started work. If Mutual wanted to ensure that its mortgages had priority over all other liens, Mutual could have paid off any contractor or subcontractor with potential outstanding liens and obtained lien waivers.

Our conclusion here is not contrary to *Greystone* because such conclusion continues to treat all contractors and subcontractors equally. LRM and Modern's liens attached when they began work and had the same priority as of the date of the first unsatisfied lien. We note that Mutual is neither a contractor nor a subcontractor, but a lending institution financing the project and thus is not technically covered as such under K.S.A. 60-1101 or K.S.A. 2002 Supp. 60-1103. Banks and other lending institutions must have a way to determine what risk they are exposing themselves to by loaning money on a project. Under the facts presented here, a lender may ensure a mortgage has priority over later perfected liens by ensuring such lender has lien waivers from all who have provided labor or materials to the project prior to the date the mortgage is filed.

Reversed and remanded for further proceedings consistent with this opinion.